## NATHAN CORWITH *et al.*

*v.*

## BELDEN F. CULVER.

1. CORPORATION—*facts sufficient to show a party to be a stockholder.* In a suit to charge one as a stockholder, under section 9 of the act of Feb. 18, 1857, it appeared that no certificate of stock was ever issued to the defendant; that at the first meeting of the company he signed a paper, with others, by which he agreed to take $5000 stock; that he acted as president of the company, and, while so acting, admitted to several persons that he had an interest in the company to the extent of $4000 or $5000: *Held,* that the facts showed the defendant to be a stockholder, so far as the rights of

creditors were concerned, and that a certificate of stock was not necessary to constitute him a stockholder.

2. Subscription—*delivery.* Where the defendant, who had signed a paper agreeing to take a certain sum in the stock of a private corporation, retained the same in his possession, but it was produced frequently at the meetings of the directors, and treated as a subscription, the defendant being the president of the company, it was *held,* that such retention by him, as the chief officer of the company, could not have the effect to show that he never became a stockholder, as against a creditor of the company.

3. Evidence—*parol, to vary written subscription.* Where a subscription of a party to the capital stock of a private corporation is absolute on its face, parol evidence is inadmissible to show that the subscription depended upon a condition. Such a condition would be a fraud upon the other subscribers.

4. Estoppel—*to deny power of corporation to act.* Where a party acted as the president of a private corporation, and held it out to the world as legally organized and acting, although, in fact, the whole of its capital stock was never subscribed, it was *held,* that when sought to be charged as a stockholder by a creditor of the company, he was estopped from setting up such fact for the purpose of showing that the company could not exercise the functions of a corporation, or enter into contracts on which he could be made liable.

Appeal from the Superior Court of Cook county; the Hon. Charles H. Wood, Judge, presiding.

This was an action of assumpsit, brought by Nathan Corwith and John E. Corwith, partners, against Belden F. Culver, to charge the defendant as a stockholder of the Balbac Smelting and Refining Company, for the payment of a judgment recovered by the plaintiffs against the company. The material facts of the case are stated in the opinion of the court.

Mr. David Fales, for the appellants.

Mr. J. B. Leake, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action brought by the plaintiffs, as creditors of a corporation named the Balbac Smelting and Refining

504 CORWITH *et al. v.* CULVER. [Sept. T.

Opinion of the Court.

Company, organized under the act of February 18, 1857, laws of 1857, p. 161, against the defendant, as a stockholder in the company, under the 9th section of the act, which provides that "all stockholders of every such company shall be severally, individually liable to the creditors of the company, to an amount equal to the amount of stock held by them, respectively, for all debts and contracts made by such company prior to the time when the whole amount of its capital stock shall have been paid in, and a certificate thereof made and filed as hereinafter required." Judgment in the court below was rendered for the defendant, and the plaintiffs appealed.

The question presented by the record is, whether the defendant was a stockholder of the company.

The company was organized August 15, 1871, in the county of Cook, and had its principal place of business there.

The certificate of incorporation filed in the circuit clerk's office of Cook county, and in the office of the Secretary of State, was signed by the defendant, and it also designated the defendant as one of the directors. The license provided for by the act was issued to the defendant and others, and under this license the company held its first meeting, August 15, 1871, at which meeting the defendant was present, and was elected president of the company. Soon after the organization, the following paper writing was signed by the defendant and others: "We, the undersigned subscribers, agree to take the sums set opposite our names, respectively, as stock in the Balbac Smelting and Refining Company," to which the name of the defendant was subscribed, for $5000. The defendant continued to act as president up to March 29, 1872, when he resigned his position, both as director and president. Whilst he so acted, defendant was generally present at the meetings of the company, and presided as president, the records of the company showing that he was present at twenty-three meetings of the company, up to Feb 19, 1872. During the time he was acting as above, defendant admitted to several persons

that he had an interest in the company to the extent of $4000 or $5000.

The plaintiffs' debt against the corporation was contracted March 8, 1872, upon which judgment was rendered against the company December 4, 1872, for $1039.33. No certificates of stock were ever issued to the defendant.

The act provides that all subscriptions to the stock of such company shall be payable in such sums and at such times as the board of directors may require, etc. The 4th section of the act provides, that the affairs of such company shall be managed by a board, of not less than three nor more than seven directors, who shall be stockholders therein; and provides that, during the first year, the persons named in the certificate aforesaid as directors, shall act as such.

We do not think it necessary, in order to constitute the defendant a stockholder, that he should have had any certificate of stock. *Spear* v. *Crawford*, 14 Wend. 20; *Chaffin* v. *Cummings*, 37 Me. 83.

In the case first cited, under a similar statute, a person was held to be liable to a creditor as a stockholder, although he had never paid anything on his stock, had never attended a meeting of the stockholders, or done any act to make him a stockholder, other than the signing of the subscription paper for stock. It was held, that such subscription puts it in the power of the subscriber to become a stockholder, by compelling the corporation to give him the legal evidence of his being a stockholder, upon his complying with the terms of the subscription, and, on the other hand, that it puts it in the power of the corporation to compel him to pay for the stock subscribed, and thereby to become a stockholder to that amount. And it was considered that such a state of things was sufficient to constitute the subscribers to stock stockholders, within the meaning of the term as used in the act, where the rights of third persons were concerned.

A deceptive provision, indeed, the legislature would have made for the security of the creditors of such corporations, by

making the individual members thereof liable, if the facts of this case are insufficient to render the defendant liable as a stockholder.

An attempt is made to avoid the force of the subscription for stock, on the ground that the defendant retained the subscription list in his possession, undelivered—that it never passed into the hands of the company.

The testimony of the defendant is, that his agreement to take stock was conditional upon his being able to effect a contemplated loan of money, and that he did not succeed in effecting the loan.

He says, that it was impossible to learn from Mr. Warner what amount of stock the latter would take, and that the subscription paper was drawn up by defendant's private book-keeper, by his direction, with reference to ascertaining whether Warner would specify exactly what amount of stock he would take; that Warner never subscribed the paper; that the paper was never out of defendant's possession, never delivered to the company, and was in his desk at the time of the Chicago fire, Oct. 8 and 9, 1871, and was destroyed by it.

The subscription by the defendant was absolute on its face— it is inadmissible to show that it was only conditional. The rule forbidding the introduction of parol evidence to explain a written instrument, meets with no exception in the case of a subscription paper for stock of a corporation. Ang. and Ames Corp. sec. 146; *Banet* v. *A. and S. R. R. Co.* 13 Ill. 509. Such a secret condition attached to the subscription would be a fraud upon the other subscribers, and the subscription should be enforced without regard to it. *Downie* v. *White,* 12 Wis. 176; *White Mt. Railroad* v. *Eastman,* 34 N. H. 124; *Mann* v. *Cook,* 20 Conn. 178; *Smith* v. *Heribrecker,* 39 Mo. 167.

One subscriber testifies that he was not aware of any such condition.

The subscription paper was not signed by defendant alone; there appear to have been at least six subscribers to it, for an aggregate amount of between $20,000 and $30,000.

The secretary and register of the company both testify that it was the subscription paper for the stock of the company, and that there was none other. At a meeting of the company, held Sept. 11, 1871, at which the defendant was present, the following resolution was passed: "On motion, *Resolved*, that stock be issued to the subscribers to the stock of the company for amounts already paid by them, on a basis of full paid stock, for twenty per cent of cash paid in." Here was a recognition on the part of a meeting of the company, in which defendant participated, of the subscription paper as a complete instrument.

The office of the company appears to have been kept in the office of the defendant, and the meetings of the company to have been held there. The secretary of the company had a desk in the office, and he testifies that this subscription paper was sometimes on his desk and sometimes on that of the defendant. It appears that, at meetings of the company, this subscription paper was present on the table. The office of the company was removed from that of the defendant shortly before the fire, the last of September or the first of October, and the subscription paper seems not to have been taken away.

For aught that appears, that may have been but an accidental circumstance. The defendant having possession of the subscription paper under the circumstances, he being the head of the company, does not militate against the idea that the paper had passed into the hands of the company, so as to make it his valid subscription.

The defendant failed in making his contemplated loan some time in October, 1871; and yet, according to the testimony of the secretary, as late as April or May, 1872, when the company supposed they had got their works running successfully, we find defendant making inquiry of the secretary if he could have his stock at any time when he called for it.

The admissions which were made by defendant as to his interest in the company, were not mere casual remarks, but were admissions of a deliberate and decisive character.

508 .CORWITH *et al. v.* CULVER. [Sept. T.

Opinion of the Court.

One witness, in view of making a loan of money to the company, called upon the defendant to ascertain who the members of the company were. Defendant informed him who composed the company, and how much of an interest in it each man had, and said he had put in from $4000 to $5000. To another witness he said, he had taken an interest in the business of the company, and was acting as president, and that he wanted to sell out; that his interest was about $5000, and carried the idea that he would take $4500, and inquired of the witness if he knew any one who would buy him out.

It is attempted to explain away these admissions of interest, by saying they had reference to an indebtedness, claimed by the defendant to be owing to him by the company for money advanced. But this is manifestly but a pretense.

Upon the evidence, we are clearly satisfied that the defendant made a valid subscription to the stock of the company.

It would rather appear, from the evidence, that the whole amount of the capital stock of the company had not been subscribed for; and it is contended, that until that had been done the company could not exercise the functions of a corporation, nor enter into contracts on which an individual subscriber could be made liable.

But, after the co-operation of the defendant to the extent shown, in carrying on the operations of the company, he must be held estopped from setting up such a defense.

We are of opinion that the defendant was a stockholder, within the meaning of the term as used in the 9th section of this act, where the rights of third persons are concerned, and that the finding of the court below was manifestly against the weight of the evidence.

The judgment is reversed and the cause remanded.

*Judgment reversed.*