SAMUEL S. BEACH *et al.*

*v.*

CHARLES V. DYER *et al.*

1. CONSTRUCTIVE TRUST—*title obtained by fraud.* Where a person obtains the legal title to land by imposition and fraud, and under such circumstances that he ought not in equity to hold and enjoy the beneficial interest, a court of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances, and declare the offending party a trustee of the legal title, and order him to hold it, or execute it, in such manner as to protect the rights of the defrauded party.

93  295
122  572
93  295
28a  167
93  295
140  602
93  295
176  484
93  295
81a  115
93  295
182  438
93  295
209  ⁴318
93  295
214  ¹139

296                   BEACH *et al.* *v.* DYER *et al.*          [Sept. T.

Opinion of the Court.

2. Where a conveyance is made of land by the holder of the legal title upon false representations made to him by a third person, which were neither authorized nor sanctioned by the grantee, and against whom no fraud is shown, he will not be declared a trustee to hold the land for the parties who have been defrauded by the conveyance.

3. SPECIFIC PERFORMANCE—*after forfeiture under contract.* Where a contract for the sale of land provided that if a payment was not made by a certain day, or immediately afterwards, the purchaser was to forfeit all payments and rights in the land, and such payment was not made or offered until a long time after the same was due, and many years after a forfeiture of the contract had been manifested by the sale and conveyance of the property to another, and a recovery in ejectment by the second purchaser, it was held that a bill for specific performance of the original contract of sale was properly dismissed.

4. SAME—*discretion.* A party is not entitled, as a matter of right, to call upon a court of equity to specifically enforce a contract for the sale of land, but the exercise of the power rests in the sound discretion of the court, in view of the contract and surrounding circumstances.

5. SAME—*laches.* A bill will not be maintained to enforce the specific performance of a contract for the sale of land, unless the vendee shows that he has always been ready, willing and eager to perform on his part. If guilty of gross *laches,* unexplained by equitable circumstances, his bill will be dismissed.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. E. P. WEBER, and Mr. J. H. KNOWLTON, for the appellants.

Mr. F. H. KALES, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Samuel S. Beach and others, heirs at law of John Beach, deceased, against Charles V. Dyer and others, to enforce, as is claimed by counsel for the complainants, the execution of a constructive trust.

The court on the hearing dismissed the bill, and the complainants appealed.

It appears from the evidence, that Carding Jackson being seized of a certain quarter section of land in Cook county, on

the 15th day of June, 1850, sold the same to John Beach, for the sum of $2500, payable as follows: $1085 cash down, and the balance, $1415, on the first day of September then next, with six per cent interest. Jackson gave Beach his bond for a deed, which contained this provision: " And it is expressly understood and declared, that if the said sum of $1415 is not paid in manner and form as above stipulated, then the above named obligee, his heirs and assigns, shall forfeit all right whatsoever, legal or equitable, to a conveyance of said premises; and the said obligor shall be at liberty to sell and convey said premises to any other person or persons, for his or their own use or benefit."

On the 9th day of September, 1850, John Beach, the purchaser of the premises, died, no part of the purchase money due on September 1 having been paid. On the 14th day of November, 1850, Carding Jackson and wife, by warranty deed of conveyance, conveyed the property to William W. Jackson for the consideration of $2500, which was paid. It also appears that in November, 1850, William F. Beach, a son of John Beach, who had been in possession of the property from the spring previous, placed one Martin in possession, who occupied the property until the next spring, when William W. Jackson brought an action of ejectment against him, and recovered the possession of the property; that a writ of possession was issued on the judgment and duly executed by the sheriff, and William W. Jackson placed in possession of the premises. It also appears, that on the 2d day of June, 1852, William W. Jackson and wife conveyed the premises, by deed of that date, to Charles V. Dyer. It also appears that Sarah Beach, widow, and administratrix of the estate of John Beach, deceased, at the July term of the Cook county court, 1852, obtained a decree authorizing her to sell all the interest of the deceased in the premises, for the payment of debts, and that subsequently such proceedings were had; that she, on the 21st day of August, 1852, conveyed to Charles V. Dyer.

It is contended, by the counsel for the complainants, that Dyer acquired the title to the property from Jackson by fraud, and that he holds the property as a trustee, in trust for complainants; and that the bill was brought for the purpose of declaring, executing and enforcing a constructive trust. It is contended that Dyer went to Jackson and falsely and fraudulently represented that he had acquired the Beach contract for the land, and by these representations induced Jackson to specifically perform the contract given to Beach.

It is doubtless true that where a person obtains the legal title to real property by imposition or fraud, and under such circumstances that he ought not, according to the rules of equity, to hold and enjoy the beneficial interest in the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances; and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it, or execute the trust in such manner as to protect the rights of the defrauded party. Such trusts are called constructive trusts. Perry on Trusts, sec. 166.

Does the evidence, introduced on the hearing, establish the fact that Dyer obtained a conveyance of the property under such circumstances as would authorize a court of equity to decree that he was not a purchaser in good faith, but held as a trustee? We think not. The evidence mainly relied upon is that of William W. Jackson. He, in substance, testified that he received no consideration for the deed made to Dyer; that the deed was executed upon the solicitation of his father, Carding Jackson, who informed him that Dyer had purchased the entire interest and title of John Beach in the land, and believing these representations to be true, and upon request of his father, he conveyed the property to Dyer. This witness does not pretend that he had any conversation with Dyer on the subject, nor does it appear that the representations made to him by his father were authorized by Dyer, or

known or sanctioned by him. We are aware of no principle of law upon which it can be held that Dyer would be bound or concluded by representations made by Carding Jackson, which were neither authorized nor sanctioned by him.

But this evidence of Jackson, if it had any bearing on the case, is entirely overcome by the evidence of Dyer and Stebbings, who were present when the deed was made by William W. Jackson. Dyer testified that he negotiated with Carding Jackson and William W. Jackson for the property; that he paid them $2000 in cash for it. Stebbings testified that he was present when the purchase was made; that he wrote the deed, counted the money ($2000) which Dyer paid for the land; that the money was paid over, in his presence, to Carding and William W. Jackson, and the deed was delivered to Dyer. If the testimony of these witnesses is entitled to credit, and we see nothing in the record which would authorize a court to disregard their evidence, then Dyer acquired the property as a purchaser for a consideration paid, which was near the full value of the property at the time the purchase was made.

There is another fact that tends to show that William W. Jackson is mistaken in regard to the version he gives of the transaction. The deed from Jackson to Dyer was made on the 2d day of June, 1852, which was prior to the time a decree was obtained to sell the Beach interest in the land, and almost three months before Dyer acquired the Beach title under the administratrix' sale. It is, therefore, unreasonable to believe that Jackson conveyed to Dyer for the reason and upon the representations that he had obtained the Beach interest in the property, when Dyer had no such interest; and it was doubtless known to Jackson, at the time, that the title of Beach had not as yet been sold by the administratrix. But however this may have been, when it was clearly established by the evidence that Dyer bought the property of Jackson on his own account, and paid for the same with his own money, we perceive no ground upon which a court of equity

could hold that Dyer obtained the title to the property in trust for the complainants,—the Beach heirs.

Much has been said by complainants' counsel in regard to the invalidity of the proceedings under which the land was sold by the administratrix of the estate of John Beach, deceased, but in the view we take of the case, it will not be necessary to inquire whether that sale was regular or void, as the decision of the case rests upon other grounds. While it is said in the argument that this is not a bill for the specific performance of a contract, yet it is apparent that unless the complainants are entitled to maintain a bill to enforce a deed on the contract executed by Carding Jackson to John Beach, then they are entitled to no relief whatever. This brings us then to the consideration of the question whether complainants are entitled to insist upon the enforcement of the contract under which John Beach purchased the premises. This contract was upon record, and as the record was notice of the interest Beach had in the property, if the contract can be enforced against Carding Jackson it likewise can be enforced against Dyer, a grantee of Jackson, with notice.

The last installment of the purchase money ($1415) was due on the 1st day of September, 1850, but it was not paid when due, nor does the evidence show that it has since been paid. Under the contract, if the money was not paid when due or immediately thereafter, the purchaser forfeited all right to a deed, and the vendor had the right to sell the premises to any other person for his own benefit. It was the duty of Beach, if he desired to insist upon a performance of the contract, to pay the amount due on the first of September or immediately thereafter. But the record contains no evidence of any payment by him, and the only evidence of any payment by the complainants since the death of Beach is that $325 in personal property, on the premises, was turned over to Jackson on the contract about the first of November, 1850. From that time down to 1869, when the bill was filed, a period of nineteen years, so far as appears from this record

no payment has been made; the complainants asserted no rights under the contract, nor did they claim any interest in the land, or exercise any acts of ownership over it. No explanation has been given for the delay, nor can it with any show of argument be contended that they were ignorant of the fact that Jackson had declared a forfeiture of the contract, because as early as the last of November, 1850, he sold and conveyed the land to William W. Jackson, and he subsequently recovered the possession of the land in an action of ejectment brought for that purpose, and after having obtained the possession, which was united with the legal title, he sold ·and conveyed it to Dyer. We can not imagine what the vendor could have done which would have shown a clearer and more explicit intention on his part to terminate the contract than what he did; and yet no steps whatever were taken by the complainants to protect their rights under the contract. After such delay, unexplained by equitable circumstances, we are aware of no principle of equity jurisprudence under which the complainants are entitled to relief.

A party can not, as a matter of right, call upon a court of equity to specifically enforce the performance of a contract for the sale of land, but the exercise of the power rests in the sound discretion of the court, in view of the contract and the surrounding circumstances.

It is also well settled that a bill will not be maintained to enforce the specific performance of a contract for the sale of land, unless the vendee has proven that he has always been ready, willing and eager to perform on his part. *McCabe* v. *Crosier,* 69 Ill. 501; *Hoyt* v. *Tuxbury,* 70 id. 331.

In *Iglehart* v. *Gibson,* 56 Ill. 85, it was expressly held that where a party has been guilty of gross *laches,* or if he applies for relief after a long lapse of time, unexplained by equitable· circumstances, the bill will be dismissed.

The decision of the circuit court was in harmony with the views here expressed, and it will be affirmed.

*Decree affirmed.*