## FREDERICK W. SHORT ET AL.

### v.

## MARY KIEFFER ET AL.

*Contract for Sale of Land—Part of Contracting Vendors Minors— Whether Vendee Entitled to Specific Performance as Against Adult Parties—Mutuality—Laches of Vendee—Discretion of Court of Equity—Result of Judicial Sale.*

1. Even where a contract for sale of land is mutual, the subject-matter within the control of the court, and there has been a prompt offer to perform, a court of equity will still exercise a sound discretion, in view of all the circumstances, as to whether it shall grant a decree for specific performance.

2. Upon the case presented, this court holds that the complainant was not entitled to receive at the hands of a court of equity a decree for the specific performance of the contract in evidence, much less, the subject-matter of that contract having been sold at judicial sale with the full knowledge of, and without objection on the part of, the vendee, and he having made no claim to specific performance prior to that sale, can he be held entitled to relief out of the proceeds of that sale.

[Opinion filed January 14, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

The appellants, Frederick W. Short, Edmund G. Short and Herman Prenzlauer, filed on June 11, 1891, by leave of court, an amended intervening petition in a case in chancery, pending in the Circuit Court, wherein Mary Kieffer, Jacob Kieffer, Peter Kieffer, Annie Kieffer, Kate Kieffer and Margaret Kieffer, were complainants in the bill, and Frank Kieffer and Christian Kieffer, were defendants. All the above named complainants and defendants in the original cause were made defendants to such amended intervening petition, and filed a joint demurrer thereto. The court, on June 12, 1891, entered an order sustaining the demurrer, and that the amended intervening petition "be dismissed for want of equity."

It appears from the petition, that on December 18, 1879, one Frank Keiffer died in Cook County, leaving a will, whereby he devised all his real estate to his wife, Mary Kieffer, for life, remainder to his children as tenants in common. That the said Frank Kieffer left seven children surviving him, viz., Jacob Kieffer, Peter Kieffer, Annie Kieffer, Kate Kieffer, Margaret Kieffer, Frank Kieffer and Nicholas Kieffer, and that subsequent to testator's death, Christian Kieffer, a posthumous child of testator, was born. About the 1st of January, 1886, said Nicholas Kieffer died, aged about nine years, and intestate, leaving as his only heirs his above named brothers and sisters, and his mother, Mary Kieffer.

The real estate owned by the testator, on which his will could operate, consisted of certain land in Cook County, a part of the southwest quarter of section 36, in township 38 north, range 13.

The petition sets forth that the state of the title, accordingly, after the death of Nicholas Kieffer, about January 1, 1886, was, viz. : Mary Kieffer, the widow, had an estate for life in the premises and an undivided two seventy-seconds of the remainder, and each of the seven surviving children held an undivided ten seventy-seconds of the remainder after her life estate; and, that the premises above described had been occupied by the testator, and after his death, by his widow and children, as a homestead, and that the homestead right had never been abandoned or released.

That on December 28, 1889, appellees, Mary Kieffer, the widow, and all the seven children, viz.: Jacob, Annie, Peter, Margaret, Kate, Christian and Frank, signed, executed and delivered to one Louis J. Hitz the following power of attorney:
" L. J. Hitz.

*Dear Sir:* You are authorized to sell, within the next six months, the forty-seven and fifty-one one hundredths acres owned by us, situated in the southwest quarter of Section 36, T. 38, R. 13, at $700 per acre, one-fourth cash, balance in one, two and three years, with six per cent interest, and we will allow you five per cent commission for selling same, to be deducted out of the first payment—provided you will pay all expenses, court costs and attorneys' fees for perfecting the title to said land by filing bill for partition.

We agree not to place this land in the hands of any one else for sale within said six months.

| | |
|---|---|
| Maria Kieffer, | Christie Kieffer, |
| Jacob Kieffer, | Maggie Kieffer, |
| Annie Kieffer, | Katie Kieffer, |
| Peter Kieffer, | Frank Kieffer." |

The said premises were those devised by the will of Frank Kieffer, deceased.

The petition further states that, acting under the above power of attorney, said Louis J. Hitz, on or about March 26, 1890, made an agreement on behalf of his principals to sell the premises to Frederick W. Short, one of the intervening petitioners, on the terms mentioned in the power of attorney, and that said Frederick W. Short then and there agreed to purchase said premises on said terms. The petition then alleges that in making said agreement Frederick W. Short was acting on behalf of himself and of his co-petitioner, Edmund G. Short, who was a partner of Frederick W. Short.

It also appears, from the amended intervening petition, that on the same day (viz., March 26, 1890), when the agreement above referred to was made, Hitz executed and delivered to Frederick W. Short the following memorandum or note in writing of said agreement:

"Chicago, March 26th, 1890.

This is to certify that I have this day sold to Frederick

W. Short the 47½ acres, situated in Section 36, T. 37 N., R. 13, known as the Kieffer farm, for seven hundred dollars per acre, as per terms in contract with the Kieffer heirs, dated Dec. 28th, 1889, and that I have received from him two hundred dollars, as part payment of purchase money, to be used toward legal expenses in perfecting the title to the same.

Louis J. Hitz."

Two of the Kieffer heirs who signed the power of attorney given to Hitz on December 28, 1889, were, at that date and at the date of the sale, minors, viz.: Christian Kieffer and Frank Kieffer, aged at the date of the power of attorney, nine and seventeen years respectively. The petition alleges as follows: "That whether or not the said power of attorney and said sale to your petitioner, Frederick W. Short, were valid and effectual as to said Frank Kieffer (the younger), and said Christian Kieffer, who were both infants at the time, said power of attorney and said sale were valid and effectual as against said adult parties, to the same, said Maria Kieffer, Jacob Kieffer, Annie Kieffer, Peter Kieffer, Margaret Kieffer, and Kate Kieffer, and that thereupon, your petitioner, Frederick W. Short, acting on his own behalf and on behalf of said Edmund G. Short, became entitled to a conveyance from said adult parties of all their rights, title and interest in said premises according to the terms of said contract of sale." The petition alleges that in pursuance of the terms of said contract of sale and said power of attorney, and for the purpose of perfecting the title to said premises and carrying out said contract of sale on their part, said Mary Kieffer, Jacob Kieffer, Peter Kieffer, Annie Kieffer, Kate Kieffer and Margaret Kieffer, as complainants, filed the original bill of complaint in this case on the ninth day of April, 1890. The proceedings in the cause after the above named complainants filed the original bill, on the date last mentioned, and prior to the filing, on June 11, 1891, of the amended intervening petition, were as follows:

The bill sought a construction of the will, the description therein of the premises being imperfect, and the complainants also desiring that the interests of the beneficiaries in the

property should be judicially declared—and, also, a partition, or, in case a partition would be an injury to the persons interested, then a sale, in lieu of partition.

On June 23, 1830, commissioners reported that the premises were not susceptible of partition, and appraised their value at $47,500. The court approved the report of the commissioners, and ordered a sale of the premises.

The petition alleges in regard to the sale: "That your petitioner, Frederick W. Short, attended said sale, with the intention of purchasing said premises, in order to thereby acquire the title to the same, to which he and Edmund G. Short were legally entitled, under his contract of sale with the widow and heirs of said testator; at least so far as all of them were concerned except said Frank Kieffer (the younger) and Christian Kieffer; and that, at no time prior to said sale, had any of said Kieffer heirs, nor had said Mary Kieffer, shown any disposition or given any notice to your petitioners, or either of them, that they or any of them, intended to repudiate said contract of sale, and that petitioners supposed that said sale was to be the means whereby petitioners Frederick W. Short and Edmond G. Short should acquire title to said premises, under said contract of sale."

That Prenzlauer also attended said sale, with the intention of purchasing at the same, and was prepared to bid a higher price for said premises than the seven hundred dollars per acre, agreed on in said contract of sale; that thereupon, at the time of said sale, it was agreed verbally between your petitioners, Frederick W. Short and Edmund G. Short, and your petitioner, Herman Prenzlauer, that said Prenzlauer should purchase said premises for the joint benefit of all of your petitioners. "Your petitioners show to your Honors that thereupon, your petitioner, Prenzlauer, purchased said premises at said sale for the sum of $36,250, cash."

Some weeks after the sale the complainants and defendants in said bill, viz., Mary Kieffer, the adult, and the infant Kieffer heirs, objected to the confirmation of the sale and asked that it be set aside. Prenzlauer, the purchaser, appeared and opposed the setting aside of the sale, and Frederick Short and

Louis J. Hitz made affidavits in aid of Prenzlauer's position. One Henry Sontag having offered upon a resale to bid the sum of $47,500 for the premises, the court ordered a resale. Upon a resale the premises were, on the 16th of March, 1891, sold to Henry Sontag for $47,500, $3,000 in cash being paid down at the time of the sale. March 17th a report of the sale was filed, and April 2, 1891, an intervening petition was filed by Frederick W. Short and Herman Prenzlauer, which petition was amended June 11, 1891, by making Edmund G. Short one of the petitioners. The amended petition offers to allow to Mary Kieffer $1,000 of the proceeds of the sale as the proceeds of an estate of homestead therein; it declared that no claim was made upon the portion of the minor heirs and offered to allow to Mary Kieffer and the adult heirs, a sum equivalent to what they would have been entitled to out of the purchase price agreed upon in the contract of March 26, 1890, if it had been carried out, and claimed that the balance of the amount realized should be paid to the petitioners in virtue of the rights by them acquired under said contract; in other words, it claimed that of the proceeds of said sale there should be paid to the petitioners, instead of to Mary Kieffer and the adult heirs, about the sum of $13,000.

A demurrer was filed to the petition, pending which the court, May 6, 1891, confirmed the sale, and the petition having been afterward amended, on the 12th of June, 1891, the court sustained a general demurrer to the amended petition and the same was dismissed for want of equity; from this order the petitioners appealed.

Messrs. FELSENTHAL & D'ANCONA and H. H. MARTIN, for appellants.

Messrs. JAMES O'CONNELL and DUNCAN & GILBERT, for appellees.

WATERMAN, P. J. If it is conceded that the instrument to L. J Hitz, as far as Mary Kieffer and the adults were concerned, gave to him authority to sell the premises therein

described, and that the sale by him made to Frederick Short, May 26, 1890, was in accordance with the power to Hitz given, and that a specific performance *pro tanto* could have been enforced by Frederick Short against Mary Kieffer and the adult heirs, he getting such estate as they had and paying them the purchase price, less a ratable deduction for the interests of the minors, the question would then arise, what are the rights of these petitioners in this application to compel, not a specific performance of the contract as made or a specific performance by a conveyance of the interests of the adults, with compensation to the vendee for the amount the adults are unable to convey—but the thing itself, which was the subject-matter of the agreement, having by consent of all passed beyond the jurisdiction of the court, what are the rights of the parties in this proceeding, wherein the chancellor is asked to decree that the money obtained upon a judicial sale, had with knowledge of, and without objection from, the vendees, shall stand in the place and instead of that contracted for and so sold ?

It is well settled that to take a contract out of the statute of frauds, so that a specific performance of it may be ordered, it is only necessary that it be signed by the party to be charged.   Browne on the Statute of Frauds, Sec. 366; Oleson v. Bailey, 14 Johns. 484; Farwell v. Lowther, 18 Ill. 252.

A reason often given for enforcing a contract which, by virtue of the statute, is not mutual, is that the other party who had not signed, by the act of filing his bill has made the remedy mutual.   Browne on the Statute of Frauds, Sec. 366; Estes v. Furlong, 59 Ill. 298–302; Perkins v. Hadsell, 50 Ill. 216–218, 219; Fry on Specific Performance, Sec. 450.

In the present case, so far as the writing executed by Hitz as the agent of the Kieffers shows, there was no mutuality; Hitz, in acting as their agent, took care only to see that they were bound to sell; he took no pains to see that any written agreement by Short to buy, was made.   The petition states what the writing evidencing the contract does not disclose—that Frederick Short, March 26, 1890, agreed to buy; but so far as appears, more than a year elapsed before, April 2, 1891, this

agreement upon his part was made known. Indeed, Frederick Short, the purchaser, failed to disclose that he had agreed to purchase these premises until at a judicial sale thereof they had brought· $14,000 more than he had undertaken to pay. It appears that Frederick Short, in purchasing this property, was acting for himself and Edmund C. Short, but he, Frederick, alone agreed to buy; and whether his pecuniary condition was such that this agreement by him to pay over $33,000 was of any value, does not appear. The receipt · by Hitz, the agent, of $200, was acknowledged. It is somewhat peculiar that this $200, paid as a part of the purchase money and which manifestly belonged to the Kieffers, Hitz, who received it, stipulated should be used toward legal expenses in perfecting the title to the premises; that is, should be used toward legal expenses, the cost of which he, Hitz, was, under his employment, himself to defray, and for which he was to receive his five per cent commission. So that under the agreement Hitz, as the agent of the Kieffer heirs, made for them, no money for their benefit was received, but only money to defray expenses which he was to pay. None of this money was ever offered to the Kieffers. It is quite true, as is contended, that in a court of equity the proceeds of the thing to which one is entitled may be followed and relief be granted by treating the proceeds as standing in the place of the thing itself. But we have been referred to no case in which this practice has been extended to the proceeds of property, where such proceeds were the result of a judicial sale, had with full knowledge of, and without objection on, the part of the vendee, and where his claim to a specific performance was not made until after such sale had taken place. The petition does set forth that at no time prior to the first sale had any of the Kieffers shown any disposition to repudiate the contract of sale, and that petitioners supposed · that the sale was to be the means whereby Frederick Short would acquire title to the premises under his contract. When objections to the confirmation of the first sale were made, it was obvious that the Kieffers did not intend to carry out the contract; they then had all the title they possessed when the con-

tract was made and the petitioners had ample opportunity before such title had been disposed of, to file a bill for specific performance. The objection that the petitioners failed to avail themselves of such opportunity, is not so much a setting up of *laches* as it is an insistance that by delaying their appeal to the court until after the contracting parties had lost all title, and the court all control of the land, the petitioners abandoned their right to ask for the specific performance.

But could the petitioners have obtained a decree for specific performance of a part, with compensation for the residue, had the land not been, with their consent, sold? Two of the parties with whom the contract was made were minors, aged respectively nine and seventeen years. The petitioners do not claim to have been ignorant of this fact; they merely urge that whether or no the sale was binding as to the minors, it was valid and effectual as to the adults. For some purposes and for some proceedings it may have bound the adults, and yet not have entitled the vendee to a decree of specific performance, for a part, with compensation as to the residue. Where a vendor can not fully perform his agreement, a vendee may in many instances insist upon a part performance, with compensation for the residue. But where the party purchasing is fully aware that the vendor has not the entire title, the case is entirely different. Castle v. Wilkinson, 5 L. R. 534, Chancery Appeal Cases; Waterman on Specific Performance, Sec. 506; Peeler v. Levy, 26 N. J. Eq. 330; Fry on Specific Performance, Sec. 1235.

In the present case, in view of the knowledge of the parties, the vendee can not be said to have contracted with the adults for a conveyance of such title as they had, and to pay them a proportionate amount of the purchase money; his contract was with all for the interest of all, and it was a contract which he knew was not binding upon all and which all could not be compelled to perform.

The allegations of the petition are that Frederick Short contracted to purchase and the Kieffers contracted to sell. Had his agreement as well as theirs been in writing, he could not have been compelled to take the interests of the adults and pay them *pro tanto*, for such was not his contract. The

agreement as stated in the petition was to sell and buy the whole, not a part. The contract was that he, Frederick Short, should pay $700 per acre for 47½ acres; this he has never offered to do. The petitioners allege that they have done everything necessary to entitle them to a conveyance from the adults of all their title to the premises. This is but a statement of a conclusion. What they have done should have been stated. The contract, as stated in the petition, was that he, Frederick Short, would pay $700 per acre, not after title upon examination had been found to be satisfactory, not upon the termination of a law suit for perfecting the title, but upon the terms mentioned in the power of attorney. These were simply, that Hitz might sell for $700 per acre, and that he should have five per cent commission, provided he paid all expenses, etc., for perfecting the title to the land by filing bill for partition. The stipulations as to what Hitz was to do in order to become entitled to his five per cent commission did not affect at all the agreement of Frederick Short to buy. He has filed a petition for specific performance without having ever before offered to comply with his contract. A party demanding specific performance of a contract, must show that he has always been ready, willing and eager to perform. Phelps v. I. C. R. R. Co., 63 Ill. 468; Corwith v. Culver, 69 Ill. 502; Beach v. Dyer, 93 Ill. 295; Hoyt v. Tuxbury, 70 Ill. 331.

It is not the case, even where the contract is mutual, the subject-matter within the control of the court, and there has been a prompt offer to perform, that the court will always decree a specific performance. The court exercises a sound discretion in view of all the circumstances. Beach v. Dyer, *supra;* Hoyt v. Tuxbury, *supra;* Story's Eq. Juris., Sec. 793; Beach v. Dyer, 93 Ill. 295; Waterman on Specific Performance, 10.

If there were no other objection to granting the prayer of the petitioners, we do not think that the circumstances connected with this contract are such as to require a court of equity to exercise its discretion by ordering a specific performance.

The decree of the Circuit Court will be affirmed.

*Decree affirmed.*