Kathryn B. Blackmore, Appellant, v. H. H. Randolph, Appellee.

Gen. No. 8,175.

Opinion filed January 25, 1928.

FRED I. EDGELL and DONALD McCORMICK, for appellant.

HERRICK & HERRICK and HAROLD F. TRAPP, for appellee.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

On May, 11, 1915, appellant purchased from appellee 108 shares of stock in the American Brick Company, a corporation which appellee was promoting. The sale was induced largely by the close relationship existing between appellant and the wife of appellee and her family. In fact, appellee acted in the sale in a fiduciary relationship towards appellant. The purchase price of the stock was $5,400, which was paid by appellant out of her own funds to appellee. Certificates of shares of stock were issued and the shares placed in the name of appellant, except eight shares of which two were placed in the names of each of appellant's four minor children. All of the certificates, however, were the property of appellant and remained in her possession and under her control. Appellant, at the time of the purchase, had the intention at some time in the future of presenting said certificates to said minors respectively, but this was never done.

After appellant purchased said shares of stock she learned that they were worthless and had no value whatever, and after learning said facts appellant demanded that said appellee take back said certificates and refund to her the said sum of $5,400. It appears that pursuant to said demand appellee, on December 19, 1917, made appellant a written offer to repurchase said certificates, which was in the following terms:

"St. Louis, Mo., December 19th, 1917.
"Mrs. Kathryn B. Blackmore,
  St. Louis, Missouri.
"My dear Mrs. Blackmore:
  "I hereby offer and agree to repurchase the stock of the American Brick Company which you bought from

me in 1915 at and for the price paid by you, to wit, $5,400.00, together with interest thereon at six per centum per annum, and to pay for the same in cash, or notes, on or before the close of the month of January, 1918. If I can dispose of the notes given me by the Malinite Company, dated September 18, 1917, and aggregating $14,500.00, I will pay cash. If I am not successful in disposing of said notes for cash on or before the close of January, 1918, then I agree to endorse to you enough of said notes to equal the purchase price of said stock above mentioned, paying the difference, if any, in cash. If in the meantime the company desires the certificates of stock surrendered and changed to common stock of the Malinite Company, you are authorized to do so.

"Please note hereon your acceptance of this proposition and oblige,

Yours truly,
(sd.) H. H. Randolph.''

On the 24th day of December, 1917, appellant accepted the offer, signed the writing and duplicates were exchanged between them. On January 29, 1918, appellee wrote appellant's attorney repudiating the agreement on the ground as stated in appellee's letter, that appellant had made charges of fraud against him and that his honor was at stake, and that his only means of defending his honor was to defend himself in a lawsuit brought by appellant to recover the said sum of money.

So far as the proofs go in this case, in 1916 the American Brick Company was still trying to float a block of its stock and was not at that time a going concern. It was shown that the Malinite Company was a holding concern, organized during the war, but that before the organization was completed the war was over and the corporation never had anything to do. The notes in the Malinite Company to the amount

of $14,500 are still in the possession of appellee, no interest ever having been paid upon them, and they are now and always have been worthless. Appellee testified that he had never offered to turn over to appellant any part of the Malinite notes, with or without recourse, and had never paid to appellant any part of the fifty-four hundred dollars or interest. Appellant tendered back the certificates of stock and brought this suit. A jury was waived and the cause tried before the court. There was a finding and judgment for appellee and appellant appeals.

It was contended on the part of appellee that part of the stock in question issued and delivered to appellant was in the name of her minor children, and that there was no privity of contract between appellee and said minors, and, therefore, appellant had no right to dispose of the stock. The certificates of stock were the property of appellant and had never been delivered to the minors. The form of the certificates was mere evidence of title and that title could be contradicted by parol evidence. (14 C. J., 837; *Dows v. Naper*, 91 Ill. 44, 46; *Corwith v. Culver*, 69 Ill. 502; *Crowther v. Bell*, 190 Ill. App. 48.)

Appellee further contends in affirmance of the judgment that the minds of the parties never met in the formation of the contract under date of December 19, 1917, inasmuch as counsel for appellant, on December 24, 1917, in returning the contract to appellee, with appellant's approval and signature, wrote appellant and referring to the Malinite notes stated: "This endorsement, of course to be regular endorsement." It is claimed that appellee never accepted this additional construction of the contract, but had reserved the right to indorse the notes "without recourse." There was nothing ambiguous or uncertain about the terms of the contract, and in answer to this contention it is sufficient to point out that on January 19, 1918, appellant repudiated the contract on an entirely different

ground. Appellant tendered back the certificates of stock to appellee. It was shown that under the laws of the State of Missouri, where appellant and her minor children resided, that appellant was the natural guardian of the persons and estates of her minor children, except that portion of any such estate as should be derived from some person other than the parent. Not even a bond was required of such natural guardian. In addition, before the bringing of this suit, all of said stock was assigned to appellee by three of said children in their own proper person, they having become of age, and the stock of the one remaining minor was assigned by appellant, as guardian, under a decree of court. While we do not consider that said minors in any manner had any interest in said certificates of stock, and hold that appellant had a perfect right to sell and dispose of the same, still, under the laws of Missouri as cited and under the common law, appellant had a legal right to enter into the contract recited, even if said minors owned an equitable interest in said shares of stock. The law of Missouri would govern in that respect. (*Schmidt v. Shaver,* 196 Ill. 108, 115.)

The law is that where one party abandons a contract and refuses further performance, the other party is entitled to rescind. He is not, however, bound to rescind, but may keep the contract alive and sue upon it for a breach, or he may adopt a third course and treat the contract as at an end for the purpose of further performance, but as still alive for the purpose of adjusting the rights of the parties to the breach. (13 C. J., 615; *McKenna v. McKenna,* 118 Ill. App. 240; *Stoneking v. Long,* 142 Ill. App. 203, 209.)

Under the terms of the contract in question appellee agreed to repurchase the stock in question and repay appellant the sum of $5,400, with interest on said sum at the rate of 6 per cent per annum from May 10, 1915. Appellee has not kept the agreement

and from a careful examination of this record we are unable to find any legal excuse in his behalf.

No propositions of law were submitted to or passed upon by the court below, and the rule cited by appellee in *Simon v. Reilly,* 321 Ill. 431, 435, as to the remanding of the cause does not apply. The rule is that where a case is tried before the court without a jury, the Appellate Court may enter such a judgment as the trial court should have entered. (*Manistee Lumber Co. v. Union Nat. Bank,* 143 Ill. 490; *O'Farrell v. Vickerage,* 184 Ill. App. 303; *People ex rel. Howard v. Harris,* 164 Ill. App. 136.)

Accordingly, the judgment of the circuit court of Logan county is reversed and the clerk of this court is directed to enter a judgment in this court that the appellant have and recover the sum of $5,400, with interest on said sum at the rate of 6 per cent annum from May 10, 1915, from the appellee, with the costs of suit, and this court enters a finding of fact.

*Reversed with a finding of fact.*

Finding of fact to be incorporated in the judgment: We find as a fact that the appellee is indebted to the appellant in the sum of $5,400, with interest on said sum at the rate of 6 per cent per annum from May 10, 1915, amounting to the sum of four thousand ninety-four and 82/100 ($4,094.82) dollars, in interest and a total sum of nine thousand four hundred and ninety-four and 82/100 ($9,494.82) dollars indebtedness, under and by virtue of the written agreement dated December 19, 1917, as set out in said opinion.