(No. 24177.—

GUS BOMBAL *et al.* Appellees, *vs.* THE PEOPLES STATE BANK OF RAMSEY *et al.* Appellants.

*Opinion filed October 15, 1937.*

J. G. BURNSIDE, for appellants.

ARTHUR ROE, and CHARLES R. MYERS, for appellees.

Mr. JUSTICE HERRICK prepared the opinion of the court:

The issue here is whether successive holdings, by a stockholder, of the same number of shares of the capital stock of a bank organized under the banking laws of this State, impose an additional and greater liability upon such stockholder than a continuous holding, by her, of the same number of shares.

The Peoples State Bank of Ramsey was incorporated January 11, 1911, with a capital stock of $30,000, divided into 300 shares of the par value of $100 each. It did a general banking business from the time of its organization until February 2, 1931, on which day, by reason of its then insolvency, it was closed by the Auditor of Public Accounts. On February 27, 1931, he appointed a receiver.

Rose Hunt Taylor, an appellant here, on August 28, 1922, became the owner of six shares of the capital stock of the bank, evidenced by stock certificate No. 187. She continued as such owner until January 21, 1930. On or about

that date, her husband was elected a director of the bank. He was then the owner of but four shares of stock. In order to enable him to qualify as such director she assigned and delivered to him the six shares owned by her. Her certificate therefor was surrendered and a new certificate, No. 214, was issued to him for the six shares. At the time of the transfer to her husband, it was agreed between them, that, as soon as he could procure other stock in the bank, he would re-transfer to her the six shares which she had negotiated to him. On March 7, 1930, Frank Taylor purchased six shares of the capital stock from Effie Whitten and caused the same to be regularly transferred on the bank's stock records to his wife, one of appellants. Certificate No. 220 was issued to her for the latter six shares. She owned the same from thence until the bank closed its doors. Dividends were paid to her by the bank on June 30 and December 30, 1930, by virtue of her ownership of this stock. On June 2, 1931, the complainants, as creditors of the bank, filed a representative suit to enforce the stockholders' super-added liability. This appellant was a defendant. This bill was later amended, adding, as defendants, all stockholders who had owned and sold stock in the bank prior to its closing. An audit was made. The ownership of the stock was divided into 73 transfer periods. Defendant's ownership of the stock from August 28, 1922, to January 21, 1930, covered periods 48 to 64, inclusive. At the time the bank suspended, $16,217.57 of deposits, made during such ownership, remained unpaid. The amount of deposit liability incurred after March 7, 1930, and unpaid on the day the bank closed, was over $120,000. A decree was entered against defendant for $600 by reason of her ownership of six shares of stock represented by certificate No. 220. She has paid this amount. The trial court refused to impose on her any liability as a stockholder for the period during which she owned the six shares represented by certificate No. 187.

From that part of the decree, the complainants appealed to the Appellate Court for the Fourth District. The decree was there reversed and the cause remanded, with directions to enter a decree against the defendant. (*Bombal* v. *Peoples State Bank of Ramsey*, 289 Ill. App. 203.) The case comes here on a certificate of importance granted by the Appellate Court.

No issue is made as to the extent of the liability of the defendant, if she is liable. We are, therefore, not confronted with the decision of the question as to whether the correct measure of her liability is the maximum of $100 per share or whether she and the contemporaneous stockholders are liable only for a sum sufficient to meet the undischarged deposit liability incurred during the period of contemporaneous ownership.

The position of the defendant is, that she never owned but six shares of the capital stock and, therefore, is responsible for an assessment of $600 only. To sustain that premise she argues that she originally owned six shares which represented an undivided six three-hundredths of the capitalization of the bank and that when she transferred these shares to her husband it was for a provisional purpose, with the mutual understanding that such stock was to be returned to her; that when she received certificate No. 220 she was thereby re-invested with the ownership of the same six shares with which she had parted by the delivery of the certificate therefor to her husband.

The transfer of the several stock certificates involved was regularly made on the stock records of the bank and recorded in compliance with section 6 of the Banking act (Smith's Stat. 1933, chap. 16½, p. 198; Cahill's Stat. 1933, chap. 16*a*, p. 159.) Section 6 of article 11 of the constitution declares, "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective

shares so held, for all its liabilities accruing while he or she remains such stockholder."

The "stock" of a corporation in its primary meaning is its capital. (*Weaver Power Co.* v. *Elk Mountain Mill Co.* 154 N. C. 76, 69 S. E. 747; *Continental Securities Co.* v. *Interborough Rapid Transit Co.* 165 Fed. 945, 963; *Wright* v. *Georgia Railroad and Banking Co.* 216 U. S. 420, 54 L. ed. 544.) This capital is usually divided into shares with some definite par value, representing a proportional interest therein. The stock certificate is not the stock itself but is the evidence of the aliquot part of the holder's ownership in the stock. (*Long* v. *Kelley,* 242 N. W. (Wis.) 562; *U. S. Cities Corp.* v. *Sautbine,* 126 Okla. 172, 259 Pac. 253; *Dehoach* v. *Bennett,* 156 Ga. 633, 119 S. E. 592.) But, as against creditors at least, it is not always necessary that a stock certificate be issued in order to constitute a subscriber for a stock a stockholder. *Corwith* v. *Culver,* 69 Ill. 502.

The term "stockholder" is defined frequently by the several States in their corporation acts. Its meaning varies according to the circumstances in which it is employed. A comprehensive definition is "one who is a holder or proprietor of stock or stocks." (Webster's New Internat. Dict. 2d ed.) Even though as between her and her husband there was an understanding that the transfer of her bank stock was temporary, only, and the same stock was later to be returned to her, nevertheless, by assigning the certificate therefor and causing a new certificate to be issued to him, which was later recorded, the defendant vested in her husband, so far as the creditors of the bank were concerned, the full title and ownership to the particular six three-hundredths part of the capital stock of the bank represented by her first stock certificate. This stock thereafter remained in and was in him at the time the bank ceased operation. She ceased to be a stockholder in the bank at the time she put the title to her stock in her husband but her responsibility

remained, as fixed by section 6 of article 11 of the constitution, and as construed by this court, as a stockholder for the undischarged liabilities incurred during the period of her ownership of such latter stock. (*Golden* v. *Cervenka,* 278 Ill. 409; *Sanders* v. *Merchants State Bank,* 349 id. 547; *Heine* v. *Degen,* 362 id. 357; *Burket* v. *Reliance Bank and Trust Co.* 366 id. 98.) On the occasion when the six shares of the stock owned by Mrs. Whitten were made over to the defendant she became the owner of an equal fractional amount of the capital stock which she first owned but it was not the same stock to which she initially had title. It is obvious that during the period preceding January 21, 1930, when Mrs. Whitten and the defendant each were stockholders in the bank, they did not own the same stock. Each was the proprietor of certain stock represented by her individual certificate. The defendant's husband later became the owner of her stock and the defendant, on March 7, 1930, became the owner of six shares of the Whitten stock. When she acquired this latter stock, a responsibility was fastened upon her by section 6 of article 11 of our constitution as a stockholder owning the six shares obtained from, and theretofore owned by, Mrs. Whitten. The shares purchased from Mrs. Whitten were other and different stock from that which the defendant held from August 28, 1922, to January 21, 1930. Mere identity in number of shares owned is not equivalent to identity of stock ownership. Each separate holding subjected her to the liability laid upon her by the constitution of this State as a holder of bank stock.

The judgment of the Appellate Court is correct and is affirmed.

*Judgment affirmed.*