## F. B. Sherwood

### *v.*

## The Illinois Trust and Savings Bank, Receiver.

*Opinion filed February 21, 1902.*

1. Corporations—*appearance of name on books as a stockholder is prima facie evidence of ownership of stock.* The appearance of names on the books of a corporation as stockholders is *prima facie* evidence that they are the owners of the stock.

2. Same—*right of creditor of a corporation to hold those appearing as stockholders liable.* A creditor of an insolvent corporation may hold those liable who appear to be the legal owners of the stock, even though transfers have been made which do not show on the books.

3. Same—*when party is liable as a stockholder though he holds stock as trustee.* One who stands upon the books of a corporation as a stockholder may be proceeded against in an action to enforce personal liability of stockholders for debts of the corporation under the statute, although he in fact holds the stock as trustee,—and particularly where the stock is issued to him directly, without any qualifications as to ownership.

4. Same—*what must be done to entitle a party to protection as trustee.* One desiring to claim the protection of section 23 of the Corporation act, exempting from liability as stockholders parties holding stock as trustee, executor, administrator, etc., must cause his representative capacity and the identity of the true owner of the stock to appear upon the records of the corporation.

5. PRACTICE—*appellee may waive omission of appeal bond.*  If, on appealing to the Appellate Court, no order is made requiring an appeal bond, no motion is made in the Appellate Court to require a bond or dismiss the appeal, and the absence of the bond is not called to the attention of the Appellate Court in any manner, it is too late to raise the objection in the Supreme Court.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

JOHN S. STEVENS, for plaintiff in error.

WALKER & PAYNE, for defendant in error.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an adjunct to and a part of an original case begun by bill in chancery in the circuit court of Cook county on January 19, 1891, by Charles F. Morse, a judgment creditor of the Pacific Railway Company, a corporation organized under the laws of the State of Illinois, for the purpose of owning and operating certain street railways in Los Angeles, California, against said company and its stockholders to enforce the statutory liability of said stockholders for any unpaid balances on their stock. The original suit was brought to this court and decree here entered finding that the holders of the stock of said corporation were liable to the extent of $68 per share to the creditors of such corporation, and directing a reference and accounting for the purpose of determining the liability of the various stockholders. (*Sprague* v. *National Bank of America,* 172 Ill. 149.)  The cause having been remanded to the circuit court of Cook county, and having been referred to the master, he made a report with reference to the persons holding said stock, and the shares held by each, and the extent of their liability. In so far as the finding and holding affected the plaintiff in error it was as follows:

"I find from the evidence that on or about October 21, 1889, the Pacific Railway Company issued to the defendant, F. B. Sherwood, one hundred and fifty shares of its capital stock of the par value of $100 a share, as per certificate No. 154 in evidence; that prior thereto W. W. Sherwood, a resident of the State of California and a brother of the said F. B. Sherwood, purchased one hundred and fifty shares of the capital stock of the Los Angeles Cable Railway Company of the par value of $100 a share, as per certificate No. 285 in evidence; that said W. W. Sherwood, through his brother, F. B. Sherwood, borrowed upon said last mentioned stock $4500 from J. R. Winterbotham; that upon the organization of the Pacific Railway Company said F. B. Sherwood, under instructions of his brother, W. W. Sherwood, exchanged said Los Angeles Cable Railway stock for said one hundred and fifty shares of Pacific Railway Company stock, and had said stock issued and delivered to him, the said F. B. Sherwood, by that name, instead of to W. W. Sherwood, at the request of the latter and of said Winterbotham; that said certificate No. 154 was duly assigned to said Winterbotham and held by him until the said loan of $4500 was paid, when it was returned to the said F. B. Sherwood, who has since retained the same; that said F. B. Sherwood acted for his said brother in the purchase of the said one hundred and fifty shares of stock of the Los Angeles Cable Railway Company. It is contended by F. B. Sherwood that he holds the one hundred and fifty shares of Pacific Railway Company stock as trustee for his said brother, and that he is a trustee within the meaning of section 23, chapter 32, of the statutes in force July 1, 1872, and therefore cannot be charged as a stockholder, and has no funds in his hands to be charged with the said liability. My conclusion is, that while it is true, from the evidence, that as between the said Sherwoods F. B. Sherwood holds said stock in trust for W. W. Sherwood, yet said stock was not issued to F. B. Sherwood as a trustee

nor impressed with any visible marks of a trust; that he is not a trustee within the meaning or spirit of said section 23 of chapter 32, above referred to; that so far as creditors are concerned he is an absolute stockholder, and cannot be permitted to set up a private and secret trust that may exist between him and his brother, to defeat his liability as a stockholder in this cause in favor of the creditors of said company. I therefore conclude that F. B. Sherwood is liable upon said one hundred and fifty shares of Pacific Railway Company stock in the sum of $68 a share, making his total indebtedness thereon the sum of $10,200."

To this report of the master plaintiff in error filed exceptions before the chancellor, and he sustained the exceptions and found that plaintiff in error was not liable under the facts so found by the master. The receiver prosecuted an appeal to the Appellate Court for the First District, where the decree of the circuit court was reversed and a formal decree entered in the Appellate Court decreeing that plaintiff in error pay $10,200, with interest thereon from August 1, 1898, at the rate of five per cent per annum, for the benefit of the creditors of said corporation, which had been declared insolvent and the indebtedness of which amounted to $1,300,000. (*Morse* v. *Pacific Railway Co.* 93 Ill. App. 33.) From this decree of the Appellate Court plaintiff in error prosecutes this writ, and for grounds of error insists that the Appellate Court erred in reversing the judgment of the circuit court and not affirming the same, and in entering judgment against plaintiff in error, and that the Appellate Court had no jurisdiction to make any order or decree in said cause, because the appellant there, the defendant in error here, neither gave nor was it required to give bond for such appeal.

The Appellate Court made no special finding of the facts different from those found by the circuit court, and in their opinion say: "Appellee Sherwood does not in his

exceptions, neither do the appellants in their assignment of errors, make any objection to or in anywise criticise the finding of facts reported by the master. We therefore accept such finding of facts as correct, * * * with the conclusions thereon of the master."

The contention of the plaintiff in error is, that the evidence shows that he was merely a holder of the stock upon which he is assessed, as trustee for W. W. Sherwood, his brother, and that by section 23 of chapter 32 (Hurd's Stat. 1889, p. 437,) he was specifically exempt from personal liability. The section of the statute relied upon is as follows: "No person holding stock in any corporation as executor, administrator, conservator, guardian or trustee, and no person holding such stock as collateral security, shall be personally subject to any liability as stockholder of such corporation; but the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder accordingly, and the estate and funds in the hands of such executor, administrator, conservator, guardian or trustee shall be liable in like manner and to the same extent as the testator or intestate, or the ward or person interested in such trust fund would have been if he had been living and had been competent to act, and held the stock in his own name."

The evidence in this record clearly establishes that, in so far as the Pacific Railway Company is concerned, W. W. Sherwood was never known to it in any way in connection with this stock. This company was organized in August, 1889. The certificate representing the shares in question was issued to plaintiff in error on the 21st day of October, 1889, the body of which certificate is as follows: "This is to certify that F. B. Sherwood is the owner of one hundred and fifty shares of the capital stock of the Pacific Railway Company, amounting to $15,000. This stock is transferable only on the books of the company, in person or by attorney, on the surrender

of this certificate.  This stock is full paid and non-assessable." W. W. Sherwood's name does not, and never did, so far as the evidence discloses, appear upon the books of this company or upon this certificate of stock, nor did any words or endorsement appear upon the stock or the books of the company that would serve as notice to the company or any person that the ownership of F. B. Sherwood was in any sense a qualified or limited ownership, nor was there anything, either from the certificate or the books of the company, that was calculated to put any person upon inquiry as to the ownership of such stock.  The interest, if any, of W. W. Sherwood in this stock arose by virtue of the agreement between him and plaintiff in error, which, in so far as it relates to the public or the Pacific Railway Company, was a secret one, or it was a resulting interest arising from the fact that W. W. Sherwood was the owner of the stock of the Los Angeles Cable Company that was exchanged for this stock.  The Los Angeles stock so exchanged, however, was transferred to plaintiff in error before the exchange for the stock in question was made, so that it is perfectly apparent from the evidence relating to this transaction that neither the Pacific Railway Company nor its creditors could have had any knowledge that W. W. Sherwood had any interest in this stock or bore any relation whatever to the company issuing it.  To all intents and purposes the plaintiff in error was the legal holder and owner of this stock.

The statute (chap. 32, sec. 8,) makes the assignor of stock not fully paid for, liable to the creditors of the company for the debts of the corporation, and also makes every assignee and transferee liable for the amount unpaid thereon.  It requires that such assignment of stock upon which a portion is unpaid be entered of record in the recorder's office.  It is clear from this evidence that this requirement was not observed, and it seems equally clear that it would be difficult for the creditors of the

corporation to fasten liability upon W. W. Sherwood, as assignor or original owner of the stock, with nothing in the records of the corporation or upon the stock certificate to indicate anything other than an absolute ownership of F. B. Sherwood.

While, it may be, sufficient appears in this evidence to establish a trust relation between F. B. Sherwood and W. W. Sherwood in an equitable proceeding between them or wherein the creditors of W. W. Sherwood were seeking to subject his property to the payment of his debts, it does not seem that such relation should be sufficient to bring plaintiff in error within the exemption claimed under section 23 of the statute. The appearance of the name of plaintiff in error on the books of the corporation as a stockholder was *prima facie* evidence that he was the owner of the stock. (*Holland* v. *Duluth Iron, etc. Co.* 65 Minn. 324.) The issuance of a certificate is not necessary. (*Thompson* v. *Reno Savings Bank*, 19 Nev. 103; *Cartwright* v. *Dickinson*, 88 Tenn. 476.) A creditor is entitled to hold him liable as a stockholder who appears to be the legal owner of the stock; and this is true although it may be that there has been a transfer of the stock which has not been entered upon the books of the corporation. (Thompson on Liability of Stockholders, sec. 178; 2 Morawetz on Corporations, sec. 852.) On the same principle, one who stands upon the books of the corporation as a stockholder may be proceeded against for the recovery of any sum upon the stock, although he in fact holds such stock as a trustee for another. (Thompson on Liability of Stockholders, sec. 179; 2 Morawetz on Corporations, sec. 852.) In the case at bar the case is made still stronger by the fact that the books have shown plaintiff in error to be a stockholder and that the stock itself is issued to him directly, without any qualifications of ownership, and in such case the above rule prevails in actions to enforce the personal liability of stockholders for the debts of the corporation under statutory provisions.

*National Bank* v. *Case*, 99 U. S. 631; *Wheelock* v. *Kost*, 77 Ill.
296; *Hale* v. *Walker*, 31 Iowa, 344; *Magruder* v. *Colston*, 44
Md. 349; 22 Am. St. Rep. 47; Cook on Stock and Stock-
holders, sec. 245; *Winston* v. *Dorsett Pipe and Paving Co.* 129
Ill. 64; *Kerr* v. *Urie*, 86 Md. 72; 63 Am. St. Rep. 493; 1 Par-
sons on Contracts,—8th ed.—122; *Ollesheimer* v. *Thompson
Manf. Co.* 44 Mo. App. 173; Thompson on Corporations,
secs. 3192, 3194, 3197.

We have found the reason of the rule no better stated
than in *Kerr* v. *Urie, supra*, where it is said: "If persons
were allowed to subscribe for stock in a national bank,
or in any other corporation where a personal liability
attaches, either as attorney for an unnamed principal,
*cestui que trust* or as attorney for an unnamed infant of
tender years, and when called upon to pay the debts of
the bank to the extent of the stock so subscribed could
escape by simply declaring that they represented in some
capacity those who are legally or otherwise incapaci-
tated, the law would be a dead letter, and the creditors
of these associations, which are found in great numbers
in every State, would be deprived of the only certain
means provided by law for the payment of their claims.
*  *  *   The only safe rule on this subject is, that when
stock is held in a representative capacity it should be
noted on the stock-book of the bank, and if a person
appears there as absolute owner of the stock he will not
generally be permitted to deny it.   If he claims to be
trustee and does not disclose it, he is guilty of *laches*,
for which others should not suffer."

To the authorities above cited many could be added,
and we are disposed to hold that one who desires to claim
the benefit of the exemption provided by our statute
for the benefit of trustees, administrators, executors and
other persons holding fiduciary relations, when dealing
in stocks of corporations in this State, should protect
himself, and the creditors of such corporations alike, by
causing his representative character and the identity of

the true owner to appear upon the records of such corporation. Any other rule will enable persons to buy the stocks of such corporations and speculate upon the chances, and if the venture is prosperous they will doubtless hold their stock, and if it is a failure they are likely to clothe themselves in the legal garb of a trustee whose *cestui que trust* is a minor or a non-resident, and in most instances whose financial condition is such that any decree entered by the court will be no injury to him or benefit to the creditors of such corporation.

*Pauly* v. *State Loan and Trust Co.* 165 U. S. 606, is the only case cited by plaintiff in error in support of his contention, but in that case the holder of the stock was a pledgee, and his relation to it expressly so appeared upon the books of the bank. Section 5152 of the Federal statute was very similar to section 23 of chapter 32 of our statutes. In passing upon the question, after a review of many of the cases theretofore decided by the same court, the court say: "The present case differs from those cited in the important particular that the stock list of the bank gave information to all who examined it that the State Loan and Trust Company was not the real or absolute owner of the shares in question, but held them only as 'pledgee;' that there was no out-and-out transfer of the stock, whereby the transferrer, as between him and the transferee, parted with his interest, and that the real ownership remained with the pledgor, the pledgee acquiring only a lien upon the stock to secure its debt." In that case several cases are cited and quoted bearing great similarity to the case at bar, in which that court had held the legal and apparent owner of the stock liable.

The only remaining contention is, that inasmuch as no appeal bond was filed at the time the case was taken from the circuit to the Appellate Court, that court acquired no jurisdiction of the case and that its judgment is a mere nullity. Plaintiff in error cites in support of this position section 67 of the Practice act, which pro-

vides that the bond shall be given within such time, not less than twenty days, as shall be limited by the court, and filed in the office of the clerk of the court from which the appeal is prayed, in such sum as the court may fix, with sureties to be approved by the court, etc., and which section says that the bond is "to secure the adverse party." He also cites note 5 on page 1000 of volume 1 of the Encyclopedia of Pleading and Practice. The weight of the authorities cited in that note are to the effect that all technical steps in appellate procedure, (among which is the giving of the bond,) pertaining merely to bringing up the case, may be waived, and the reason assigned is, that they are ordinarily held intended purely for the appellee's benefit. The only State supporting his contention is Massachusetts. The rule is there further stated that "a general appearance, as by joinder in error in or an agreement to submit the cause on briefs or oral arguments, is a sufficient waiver." In this case no order of court was made requiring bond and no motion was made to dismiss the appeal in the Appellate Court for want of bond, nor was the attention of the court in any manner called to the absence of such bond, or any request on the part of the plaintiff in error that the appellant there should be required to give a bond. The first complaint, so far as the record discloses, made on the part of the plaintiff in error of the want of a bond is in this court upon this writ of error. We think the complaint comes too late. The appeal bond was for his benefit and was such a matter as he could waive, and the plaintiff in error must be held to have waived a provision that the statute says was for his benefit, and to which he gave no attention until after a judgment adverse to him had been entered.

The decree of the Appellate Court is affirmed.

*Decree affirmed.*