Norman Cohen et al., Appellees, v. North Avenue State Bank et al., Appellants.

Gen. No. 39,519.

Heard in the first division of this court for the first district at the June term, 1937. Opinion filed October 18, 1937.

CAMPBELL, CLITHERO & FISCHER, of Chicago, for appellant Frank P. Ross. ALDEN, LATHAM & YOUNG, of Chicago, for appellant J. S. Duncan. SCHUYLER, WEIN-

FELD & HENNESSY, of Chicago, for appellant Daniel J. Schuyler, Jr.; JAY STOUGH and LAWRENCE NELSON, JR., both of Chicago, of counsel.

JACOBSON, MERRICK, NIERMAN & SILBERT, ISIDORE BROWN, DECKER & GOLDEN, OWEN, O'MALLEY, MC-KEOWN & ALLAN, HAROLD L. PERLMAN, MARVIN J. WELFELD, IRVING GOODMAN, McCARTHY & TOOMEY and ISADOR BECKER, all of Chicago, for appellees; IRVING GOODMAN, of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

This suit in equity is brought by creditors of the North Avenue State Bank on behalf of themselves and other creditors against former and final stockholders of the bank, to enforce the superadded constitutional liability of the stockholders. The bank was closed by the State Auditor June 18, 1932. The State Auditor, July 11, 1932, which was prior to the filing of the complaint in the instant case, had filed a suit in the circuit court of Cook county for the liquidation of the bank.

The cause was referred to a master who took the evidence and made up his report. He found certain past and present stockholders of the bank were liable for specific amounts and recommended a decree in accordance with his finding. A decree was entered substantially as recommended by the master, from which three of the former stockholders of the bank, J. S. Duncan, Daniel J. Schuyler, Jr., and Frank P. Ross prosecute this appeal.

The record discloses that Duncan owned 10 shares of the stock of the bank from September 18, 1906, to March 3, 1920, and the unsatisfied liabilities of the bank accruing during such time were $24,629.74; that Schuyler owned 25 shares from July 12, 1910, to September 9, 1920, and the unsatisfied liabilities accruing

during such time were $31,534.44; that Ross owned 255 shares at various periods of time from February 10, 1920, to February 9, 1923, and the unsatisfied liabilities accruing during such time were $45,598.39. The par value of the stock was $100 a share, and under the facts above stated Duncan would be liable for $1,000, Schuyler for $2,500 and Ross for $25,500 sec. 6, art. 11, Constitution of 1870; *Golden v. Cervenka,* 278 Ill. 409) unless some of the contentions of the three defendants (which will hereinafter be referred to) are sustained. The master recommended that a decree be entered fixing the amounts for which the three defendants were severally liable as above stated; the chancellor decreed that Duncan and Schuyler were liable for the amounts as found by the master, and that Ross was also liable for $25,500, but since the receiver in the suit brought by the Auditor in the circuit court had paid two "dividends" aggregating 50 per cent, Ross was decreed to pay $22,516.16, being the then net amount of the unsatisfied liabilities of the bank which accrued during the time he held the stock. Complainants have taken a cross-appeal as to the amount Ross was decreed to pay, contending that it should have been $25,500.

Each of the three defendants who appeal has filed a separate brief, which does not simplify or make clear the issues presented because each of the three raise many of the same points.

The three defendants contend that the right of action claimed against them is barred by the 10-year Statute of Limitations because they had disposed of their stock in the bank more than ten years before the instant suit was brought. While neither the Appellate nor the Supreme Court of this State has squarely passed on this question, we think the contention cannot be sustained. It has been held that the cause of action of the creditors of an insolvent bank against the stockholders does not accrue until the bank suspends business and refuses to pay its depositors. *Sanders v.*

*Merchants State Bank,* 349 Ill. 547; *Golden v. Cervenka,* 278 Ill. 409; *Heine v. Degan,* 362 Ill. 357.

In the *Sanders* case the court said (pp. 563–564): ''The contract of the bank with each depositor is to pay the money deposited on demand made at its banking house, in such sums, at such times and to such persons as the depositor may direct. (Citing cases.) Until demand the depositor can maintain no action against the bank and therefore has no cause of action. The stockholder is liable to the same extent as the bank—that is, to pay upon demand money of the bank in such sums, at such times and to such persons as the depositor may direct. He can be held on no other terms and no action can be maintained against him until demand made on the bank. The stockholder is under no stricter liability than the bank, but under the constitution his liability is identical with the liability of the bank during the time he remains a stockholder and not something different.'' Three of the justices dissented on another point in that case, but agreed with the majority on the question now under consideration. After quoting the provision of our constitution imposing liability on stockholders of a bank they said (p. 572): ''We hold the liability of a stockholder becomes an absolute liability to the creditors of the bank when the bank refuses or neglects to pay its liability or obligation at the time and place where it is obligated to do so, or has suspended business, and is unable to pay its liability and obligations by reason of its insolvency. . . . It is stated in the decision of the court that no action can be maintained against the stockholder until demand has been made upon the bank for payment. We all agree, however, that the liability of all the stockholders in this case became absolute to the creditors and obligees of the bank on December 8, 1930, because of the fact that on that date the bank suspended business and closed its doors.'' In the instant case suit was brought within a year after the bank closed

and under the holdings of our Supreme Court the action was not barred.

Defendant Duncan also contends that the liability of stockholders of a bank imposed by the Constitution and the statutes cannot be enforced "because no standard of measurement is provided by which the amount of such money can be ascertained." This contention cannot be entertained by this court because it has often been decided adversely to Duncan's contention by our Supreme Court in the *Golden, Sanders* and *Heine* cases. As stated, each of the defendants was held to be liable for the unsatisfied liabilities of the bank which accrued during the respective times they held their stock, to the extent of the par value of their stock. The unsatisfied liabilities accruing while Duncan and Schuyler held their stock, after deducting the 50 per cent dividends paid in the liquidation suit in the circuit court, was several times more than the par value of their stock. The liabilities which accrued while defendant Ross held his stock, after this sum was reduced by applying the 50 per cent dividends, were less than the par value of the stock held by him, which was $25,500. The unsatisfied liabilities which accrued while Ross was a stockholder were $45,032.32; the chancellor deducted from this amount the 50 per cent dividends, leaving a balance of $22,516.16, for which amount Ross was held liable.

In determining the amount of the liabilities which accrued during the respective times the three defendants held stock, the rule in *Clayton's Case* (1 Meriv. 572) was applied, which is referred to in the briefs as "first in first out rule."

In the *Heine* case (362 Ill. 357) the court said (p. 373): "the rule that presumably the first money paid in was the first paid out, laid down in *Clayton's Case,* 1 Meriv. 572, and approved in *People v. Tallmadge,* 328 Ill. 210, *Sanders v. Merchants State Bank,* 349 id. 547, 558, will not work injustice."

Counsel all agree that this is the proper rule. But counsel for defendant Ross contend that this same rule is applicable to the distribution of the dividends paid by the liquidating receiver, and that applying the rule in the distribution of the 50 per cent dividends, the unsatisfied liabilities of the bank, of $45,032.32, which accrued while Ross held the stock, would be reduced to $6,737.85, as found by the decree, and that this sum is the greatest amount Ross can be held liable for in any circumstance. The chancellor held, as a matter of law, that in the distribution of the 50 per cent dividends the rule in *Clayton's Case* was not applicable, and with this we agree. Section 6 of art. 11 of the Constitution of 1870 provides that every stockholder in a banking corporation shall be individually liable to its creditors over and above the amount of stock held by him, to an amount equal to the shares he holds, "for all its liabilities accruing while he . . . remains such stockholder." Section 11 (chap. 16a, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 10.11) provides for the liquidation of a State bank by the auditor of public accounts through the appointment of a receiver; that "From time to time the Auditor of Public Accounts shall make a ratable dividend of the moneys collected by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such bank are collected, shall make further dividends on all claims previously proven or adjudicated"; that the receiver shall, after the expiration of 12 weeks, file with the clerk of the court in which the liquidation suit is pending "a correct list of all creditors of said bank, as shown by its books, who have not presented their claims and the amounts of their respective claims after allowing all just credits, deductions and set-offs as shown by the books of said bank. . . . After one year from the final dissolution of the

bank, the Auditor shall make a *pro rata* distribution thereof to those claimants who have accepted dividends until such claim or claims are paid in full, and if any of said moneys shall then remain in his hands, the Auditor shall distribute the same *pro rata* to the stockholders.''

In the *Heine* case (362 Ill. 357) the court said (pp. 368–369): ''With regard to the distribution of money collected from stockholders two constructions may be made. Under one construction a stockholder's liability is limited by, first, the par value of his shares, and second, by the total amount of 'liabilities accruing while he or she remained such stockholder,' and the money would be distributed ratably to all of the creditors of the bank. Such a construction makes the latter part of the section, 'to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder,' a measure of the liability rather than a designation of what creditors are entitled to share in the money due. The definition of those entitled to share in the money recovered from a stockholder is thus restricted to the first clause, 'Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors.' This construction places all creditors on an equal footing.

''The second construction would make a stockholder pay liabilities of the bank incurred while he was such stockholder for the benefit of those creditors, alone, whose claims accrued during his ownership.'' And it was held this latter construction was not tenable. Continuing the court said (p. 371): ''It was doubtless the object and purpose of the framers of the constitution of 1870 that all claims arising under section 6 of article 11 should be regarded as being for the benefit of all the creditors of the bank, ratably, in case the bank became insolvent. This carries into effect the principle that

'equality is equity,' and will avoid a large measure of perplexing difficulties that otherwise arise in making distribution."

Under section 11 of the statutes above referred to, and other authorities, we are clearly of opinion that the money collected by the receiver in the liquidation suit, whether from the stockholders of the bank or from other resources of the bank, must be distributed ratably to all of its creditors. Giving defendant Ross the full benefit of the 50 per cent in dividends reduces the liabilities of the bank incurred while he owned the stock to $22,516.16, and it was decreed that he was liable for this amount and not for the face value of his stock, viz., $25,500. We think this was in accordance with the law. *Burket v. Reliance Bank & Trust Co.*, 366 Ill. 98; same case, Appellate Court Second District, opinion by Mr. Justice Wolfe, Schwartz v. Broadway Tr. & Savings Bank, 291 Ill. App. 460.

In the *Burket* case, which was a suit brought to enforce a constitutional liability of the stockholders of a defunct State bank, the court said (p. 100): "Both sides agree to the principle that a stockholder's liability in a defunct State bank is measured by the unsatisfied liabilities which accrued during the period of stock ownership, subject to the limitation that the stockholder's liability shall not exceed the par value of the stock held by him. In ascertaining the liability of an individual stockholder, the court in which the representative suit is pending must ascertain two primary facts: First, the aggregate amount of liabilities which accrued while the stockholder held his stock, and, second, the par value of the shares of stock so held by him. Without the existence of unsatisfied claims, which accrued while he remained a stockholder, he is under no liability to the bank's creditors at all. . . . If a group of contemporaneous stockholders pay to the receiver in the creditor's suit a sum equal to all the liabilities incurred during the contemporaneous owner-

ship, their liabilities are satisfied, and there is no warrant of law to compel that group to pay to the receiver, for the benefit of creditors, a sum greater than the aggregate of liabilities incurred by the bank while that group were the stockholders.'' The Supreme Court transferred the case to the Appellate Court because there was no constitutional question involved which had not theretofore been settled by the decisions of that court. The Appellate Court held that since a group of contemporaneous stockholders paid to the receiver in the liquidation suit a sum equal to all the liabilities incurred during the contemporaneous ownership, one of such contemporaneous stockholders who had paid nothing could not be held liable in the representative suit brought on behalf of the creditors of the bank against the stockholders, following the clear reasoning of the Supreme Court in its opinion transferring the case.

The court authorized the receiver in the instant case to employ an auditor to examine into the affairs of the bank. He examined the bank records to ascertain unsatisfied liabilities up to the day the bank closed. Exhibits were prepared by him showing the result of his work, and he testified before the master that he made no examination of the loan and discount register of the bank to ascertain its assets, and whether the bank held any off-sets against any of the creditors of the bank. He began his audit in March, 1933, and completed it in July of the same year. The court, in the liquidation suit authorized its receiver to allow certain set-offs between the bank and certain of its creditors, and further authorized the receiver to pay a dividend of 45 per cent and another of 5 per cent, which has been done. After this, in 1935, the auditor employed in the case at bar testified that he examined all of these orders and checked them with the loan and discount register of the bank to see that they were correct, and

gave credit accordingly. The exhibits which were prepared and the books of the bank, from which he derived information, were received in evidence over defendants' objection that they were not competent because his computations were not based upon an examination of the whole collection of the records of the bank, but only upon a part of them. And counsels' further argument, as we understand it, is that any off-sets the bank held against its creditors should have been taken into account by the auditor, that this was necessary to determine the unsatisfied liabilities of the bank which accrued during the time defendants held stock in the bank, and that this not having been done by the auditor, his evidence should have been excluded. We think this contention cannot be sustained. The proper place for the allowance of off-sets was in the liquidation suit, and although defendants were not parties to that suit they would be bound by the orders there entered. In the instant case the auditor making the examination of the bank records would not be in a position to pass on the validity of off-sets. And the fact that the bank had assets which might ultimately be liquidated to pay the creditors in full is not a defense in the case before us. *Heine v. Degen,* 362 Ill. 357, and *Comstock v. Morgan Park Trust & Savings Bank,* 287 Ill. App. 613 (Abst.). In the *Heine* case it was held that it was not error to deny defendants' motion to proceed without first allowing claims of creditors to be proved. The court in the *Heine* case said (p. 373): "It is not a prerequisite that all claims to be proved by the creditors in order to determine the amounts owing by the individual stockholders who are primarily liable." And continuing the court said (p. 379): "We reviewed the authorities in that decision, and from what it contains there can be no question that the cause of action here is contractual. The liability is a primary one imposed by

the constitution and the statute, and is read into the contract of purchase, by operation of law, whenever a share of stock is bought.''

The bank having gone into liquidation and a suit having been brought by the auditor for such purpose, the statute authorized creditors of a bank to bring the instant suit—a representative suit—against the stockholders. Sec. 11, chap. 16a, Ill. State Bar Stats. 1935, Jones Ill. Stats. Ann. 10.11. The fact that the assets of the bank may ultimately pay all of the liabilities does not prevent the prosecution of a suit against the stockholders. From what we have said, we think the evidence objected to was properly received in evidence.

Complainants have prosecuted a cross-appeal contending that the ''decree against defendant Ross should be increased from $22,516.16 to $25,000,'' because after applying the dividends of 50 per cent, the unsatisfied liabilities of the bank amounted to more than $848,000, and that the defendant Ross is not entitled to have the dividends applied to reduce his liability. In support of this the case of *Comstock v. Morgan Park Trust & Savings Bank,* decided by this court and above mentioned, is cited. In that case we held that if the stock liability there sought to be enforced was collected in full, this amount, together with the other assets of the bank, would be wholly insufficient to pay the creditors, and that if the dividend of 25 per cent paid by the liquidating receiver in that case were credited, the unpaid liabilities would still be more than $500,000. What we have hereinbefore said disposes of the contention that the dividends should not have been allowed to reduce the unsatisfied liabilities of the three defendants.

But counsel for complainants further say that Ross should be required to pay the $25,500, being the par value of the stock formerly held by him, because section 2 of our Interest Act provides that creditors shall be allowed 5 per cent per annum on all moneys after

they become due; that giving Ross the benefit of the 50 per cent dividends on the $45,032.32 leaves unsatisfied liabilities which accrued during the time he held the stock, as found by the decree, of $22,516.16, and that "5% of the latter sum for five years" (the period that elapsed since the insolvency of the bank) makes the amount due more than the $25,500. There is no merit in this contention. In equity, interest is allowed because of equitable circumstances, and is given or withheld as, under all the circumstances of the case, seems just and equitable. *Golden v. Cervenka,* 278 Ill. 409. We think it would be highly inequitable to require Ross to pay 5 per cent interest where he had sold his stock in the bank 10 years before it became insolvent.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

McSurely and Matchett, JJ., concur.