Armin F. Hillmer et al., Appellees, v. Chicago Bank of Commerce et al. Stevens A. Bennett et al., Appellants.

Gen. No. 40,575.

Heard in the first division of this court for the first district at the February term, 1939. Opinion filed December 22, 1939. Rehearing denied and opinion slightly corrected January 8, 1940.

Matthews, Harmon, Karr & Springer, Charles A. McDonald, John K. Notz, Hopkins, Sutter, Halls & DeWolfe, Isham, Lincoln & Beale, Wilson & McIlvaine, Markheim, Parker & Miller, Mayer, Meyer, Austrian & Platt, Pope & Ballard, McDonald & Richmond, William F. Price, Thomas G. Deering, Shulman, Shulman & Abrams, all of Chicago, for appellants; Kenneth L. Karr, John K. Notz, Donald J. DeWolfe, Becher W. Hungerford, Marshall Sampsell, J. F. Dammann, K. F. Montgomery, Clarence E. Fox and Frank D. Mayer, all of Chicago, of counsel.

Leonard & Leonard, Seyfarth & Atwood and Owens & Owens, all of Chicago, for appellees; George Edward Leonard, Ernest E. Freeman, Jr. and Gordon McLeish Leonard, all of Chicago, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiffs on behalf of themselves and other creditors of the Chicago Bank of Commerce, brought suit against former and final stockholders of the bank to enforce the superadded, constitutional liability of the stockholders. The cause was referred to a master in chancery who took the evidence, made up his report and recommended a decree adjudging defendants liable for certain specific amounts. The decree substantially followed the recommendation of the master, and certain of the stockholders prosecute this appeal.

The record discloses that the Chicago Bank of Commerce was organized April 5, 1930, with a capital stock of $3,000,000 divided into 30,000 shares of $100 each. Afterward on February 7, 1931, the capital stock was reduced to $1,500,000 divided into 30,000 shares of the par value of $50 per share. In accomplishing the reduction $2,400,000 was distributed among the stockholders. The auditor of public accounts approved the reduction and each stockholder was given a new cer-

tificate of the par value of $50 in lieu of the old certificate of the par value of $100. The bank conducted its business in Chicago until June 25, 1932, when it closed and possession was taken by the auditor of public accounts. Afterward the auditor appointed a receiver and filed a suit in the circuit court of Cook county to liquidate the bank, which suit is still pending. The receiver in that case has paid dividends aggregating 35 per cent. On the day the bank closed, June 25, 1932, a suit was filed by certain creditors of the bank and on July 1, 1932, a similar suit was filed by other creditors against the stockholders, which suits were consolidated and disposed of as one suit. The decree entered in the consolidated cases is the one that is before us on this appeal.

The master found that on the hearing before him, exhibits were introduced (which he returned with his report) "showing the names of all persons to whom" the bank was indebted at the time it closed, the amounts of the respective liabilities of the bank unpaid, the dates of the accrual of each, and the aggregate amount of unpaid liabilities "as adjusted and reduced by set-offs and counterclaims" from the date the bank closed, June 25, 1932, to April 16, 1936, which aggregated $3,871,864.42. The decree which was entered September 17, 1938, found that on that day there was more than $3,000,000 still due and unpaid to the creditors of the bank; that the number of persons to whom the bank's indebtedness was due was large, more than 32,000, and the master found that claims were correct and proper.

The unpaid liabilities which accrued from the time the bank opened, April 5, 1930, to the time the capital stock was reduced, February 7, 1931, were $79,417.60 and the unpaid liabilities which accrued covering the period from the time of reduction to the time the bank closed, June 25, 1932, were $3,792,447.02.

A number of stockholders have paid and settled their liabilities with the receiver. Defendants, about 31 stockholders of the total number of stockholders who appeal, contend that the unpaid liabilities which accrued during the $100 period were satisfied and discharged by payments made by other contemporaneous stockholders.

The law is well settled that "If a group of contemporaneous stockholders pay to the receiver in the creditors' suit a sum equal to all the liabilities incurred during the contemporaneous ownership, their liabilities are satisfied, and there is no warrant of law to compel that group to pay to the receiver, for the benefit of creditors, a sum greater than the aggregate of liabilities incurred by the bank while that group were the stockholders." *Burket v. Reliance Bank & Trust Co.*, 366 Ill. 98; *Schwartz v. Broadway Trust & Savings Bank*, 291 Ill. App. 460; *Cohen v. North Ave. State Bank*, 291 Ill. App. 558; *Flanagan v. Madison Square State Bank*, 292 Ill. App. 448; *Burket v. Reliance Trust & Savings Bank*, 296 Ill. App. 406. And defendants say that of the unsatisfied debts which accrued during the $100 period, only $79,417.60 remained unpaid when the bank closed; that since that time the receiver in the liquidation suit has paid dividends to creditors whose claims accrued during the $100 period aggregating $23,825.28, leaving a net of unpaid liabilities which accrued during that period of $55,592.32, and that the evidence shows that more than the latter sum has been paid by other contemporaneous stockholders. That the payments made by such stockholders fall into two classes, (1) those who held stock only during the $100 period and who paid $17,303, and (2) those stockholders who held shares during both the $100 period and the $50 period, and who paid more to the receiver than they were required on account of holding stock during the $50 period; that such excess payment should

be applied in reduction of the liabilities which accrued during the $100 period. In explanation counsel say: ''This situation is illustrated by the case of William H. Emery, who held 50 shares of the par value of $100 each from April 5, 1930 to February 7, 1931. On this latter date the par value of his shares was reduced to $50 each. He then held the 50 shares of the par value of $50 each from February 7, 1931, to the close of the bank, June 25, 1932. Emery's maximum liability on the 50 shares of $50 par stock held from February 7, 1931 to June 25, 1932, was obviously $2,500. But he paid the receiver in settlement of his superadded liability $5,000. His payment was $2,500 in excess of his maximum liability on $50 par shares held. That part of his payment in excess of his maximum liability on $50 par shares must have been made to satisfy his responsibility for liabilities which accrued during some other period while he held stock of the bank. Inasmuch as the only other period in which he held stock was the $100 par period, his excess payment of $2,500 must necessarily reduce liabilities of stockholders which accrued during the $100 par period.'' Counsel then analyze the payments and the liabilities and their conclusion is that the payments are ''$13,686.18 more than the unsatisfied liabilities of the bank which accrued during the $100 par period.'' If this method of computation were adopted the maximum liability of one who held a share of stock during the existence of the bank would be $150. We think Emery was clearly liable for not more than $100 per share for the 50 shares.

As stated above, the law is clear that if one held a share of stock of the par value of $100 in case of insolvency of the bank he would be liable for not more than $100. If he sold his share of stock and a new share of $50 par value was issued to the purchaser, the maximum liability of the purchaser would be $50, so that the liability of the two would be $150. *Sanders v. Merchants State Bank,* 349 Ill. 547, but that it is not

the case here. The stock continued to be held by the same person after the reduction and his liability was not more than $100.

A separate brief has been filed on behalf of David A. Noyes, *et al.*, doing business as David A. Noyes & Co., who held stock during the $50 period only and who were held liable by the decree for $5,876.85. The contention made is that Noyes & Co. held 120 shares of stock as stock brokers for sale only and that the stock belonged to Francis E. Matthews.

The record discloses that July 2, 1931, Francis E. Matthews held a certificate of stock in the bank, # 1747 for 170 shares of the par value of $50 each. Attached to the certificate, his counsel say, "is a stock power signed by said Francis E. Matthews." There also appears on the back of this power, apparently by using a rubber stamp, the following: "We hereby certify that we have no ownership in ——— shares of the stock above transferred, the transfer by the owner to us being merely for the purpose of sale. David A. Noyes & Company, 208 South LaSalle St., Chicago, Ill." Apparently at the same time Matthews executed what is designated an "Irrevocable Stock Power—Individual." It recites that for value received Matthews has sold 20 shares and 100 shares to David A. Noyes & Co. of the bank stock as represented by Matthews' certificate # 1747. Then follows the usual power of attorney to sell and transfer the stock. October 5, 1931, the bank issued a certificate for 20 shares to "David A. Noyes & Company" and on the same day a similar certificate for 100 shares to Noyes & Company, and the stub of the certificate book of the bank shows the shares were formerly owned by Francis E. Matthews as evidenced by certificate # 1747. There also appears in the record a certificate executed by a vice president and the cashier of the bank certifying that on October 5, 1931, Francis E. Matthews, who owned 170 shares of the bank stock evidenced by certificate # 1747, had transferred 120 of such shares evidenced by certificate

# 1789 for 20 shares and certificate # 1790 for 100 shares to David A. Noyes & Co., 208 South LaSalle St., Chicago. This certificate was recorded in the Recorder's Office of Cook county October 30, 1931. At the time of the issuance of the two certificates for 20 and 100 shares to Noyes & Co., as above stated, counsel for Noyes & Co. say there was also issued a new certificate to Francis E. Matthews for the remaining 50 shares of the 170 shares. October 7, 1931, Noyes & Co. sold 10 of the 20 shares to Lennart Janson and on February 10, 1932, sold the 100 shares to George R. Joslyn, and the bank officials made out certificates of such sales, the first one dated October 15 and recorded October 30, and a second certificate dated February 15, 1932 and recorded February 29, 1932. Counsel say that plaintiffs' "evidence shows that said David A. Noyes & Co., was not the owner of said stock and was not held out to the creditors of the Bank or to others, by the books and records of the Bank, or otherwise, to be the owner thereof" and therefore Noyes & Co. are not liable as stockholders of the bank. In support of this it is said that it is the actual owner of the shares of stock who is liable for the statutory or constitutional liability, and *Gahagan v. Whitney,* 359 Ill. 419, and other authorities are cited.

The *Gahagan* case was a suit by creditors to enforce stockholders' liability against claimed stockholders of a state bank which was closed for liquidation March 18, 1932. The evidence showed that Fred A. Brewer, who owned 25 shares of stock, died intestate July 15, 1923. His widow was appointed administratrix. She acted as such until the estate was closed January 3, 1930. The inventory which she filed in November, 1923, listed the 25 shares of stock. There were no children and the widow took his entire personal estate. Her final report showed that all the claims against the estate had been paid, leaving a balance of more than $4,600, which she retained as sole heir of the estate. The stock was not mentioned in the report. It was

never transferred on the books of the bank from the name of Brewer. It further appeared that during the administration of the estate a certificate for 10 shares of stock which had been made out to Brewer in his lifetime but had not been delivered, was received by the widow in her individual capacity and not as administratrix; that in 1928, while the estate was being administered, two dividends amounting to $250 were paid on the stock. Checks were made payable to the widow individually, which she cashed, and it was held that the widow was liable because she was the actual owner of the stock.

Section 6, ch. 16½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 10.06], makes it the duty of bank officials to file with the recorder of deeds of the county in which the bank is located, a certified list of all stockholders but that no such transfer of stock shall operate as a release of the superadded liability of the stockholder. We hold that as to creditors of the bank, Noyes & Co. are liable as stockholders. *Sherwood v. Illinois Trust & Savings Bank,* 195 Ill. 112; *Golden v. Cervenka,* 278 Ill. 409; *Wheelock v. Kost,* 77 Ill. 296; *Bombal v. Peoples State Bank of Ramsey,* 367 Ill. 113.

In the *Golden* case, the Supreme Court in passing on a question similar to the one before us said: ''Shares of stock were issued to some of the appellants either as brokers, to be held for the benefit of their customers, or as pledgees, to secure advances of money, and on their appeals it is insisted that the persons to whom the shares were so transferred, though appearing on the books of the bank as stockholders, are not subject to liability as stockholders on that account. These questions have been decided adversely to the appellants in the cases of *Sherwood v. Illinois Trust and Savings Bank,* 195 Ill. 112, and *Wheelock v. Kost,* 77 id. 296. A creditor is entitled to hold him liable as a stockholder who appears on the books of the corporation to be the legal owner of the stock.''

Another brief is filed on the part of some of the defendants who raise the point that "There is no proof in the record as to who are the creditors of the bank"; that the burden is on plaintiffs to prove this fact and also to prove "What are the net unsatisfied liabilities of the bank to each of its creditors" and "When each of said liabilities accrued." In support of this it is said that the testimony of the accountant who prepared the audit "shows that he did not examine or take into account the *asset* accounts in the books of the bank; that it was the *liability* accounts *only* that he used in preparing the accrual audit"; that he did not examine the "Loan and Discount Register" of the bank "and did not take into account the accounts shown therein, in determining whether the various customers of the Bank who had deposit accounts (liability accounts) with it had borrowed money from it. . . . *In other words, there has been no attempt to prove the net debtor-creditor relationship between the Bank and its respective customers.*"

Whitney B. Flershem testified that he had been a certified public accountant since 1912 and had examined the assets of other closed banks; that he made an audit of the Chicago Bank of Commerce to determine the existence and extent of its unsatisfied liabilities; that his first examination was completed June 1934; that since that time he had made a supplemental examination; that the accounts were copied showing the number of accounts, the name of the creditor, the amount due when the bank closed, etc.; that "Offsets were taken into consideration from the earliest dates in consistency with the policy under which we copied the accounts"; that plaintiffs' exhibit, which he produced, "is a summary by days of the return items, offsets and counterclaims from April 9, 1930, to June 24, 1932." On cross-examination he testified about this exhibit and said that it "is a summary of the offsets. . . . The original audit contains offsets and preferred claims allowed to June 11, 1934"; that addi-

tional offsets were afterward allowed. He gave further testimony along this line going into details and figures. He testified to a further exhibit prepared by him in which was shown the name of each stockholder, the period of stock ownership, the number of shares, the par value of the shares, and the "unsatisfied liabilities accruing during each period of stock ownership are shown there." On further cross-examination he testified that he took into account the records made by the receiver in the liquidation suit since the closing of the bank showing the payments made by such receiver, that "These payments and offsets were not reflected on the books of the Bank itself." The witness was on the stand a number of different times and on the last day, on cross-examination he testified, "We paid no attention to the asset side of the books of the Chicago Bank of Commerce in making our accrual audit. . . . We did not reflect in our accrual audit any offsets to which the bank may have been entitled against the respective creditors, . . . except those that had been allowed by the Receiver; and in that respect we merely took and reflected those offsets which had been allowed by the Receiver. In making our accrual audit we made no investigation to determine the net debtor and creditor relationship between the bank and its respective creditors during the life of the bank."

It is difficult to follow the testimony of this witness as appears from what we have just said. He testified in effect that he had examined the books and showed offsets, names of creditors, and the unpaid liabilities, etc. We think the evidence is sufficient. The record shows there were more than 32,000 creditors of the bank at the time it failed and that after a payment of all dividends there is still due to the creditors more than $3,000,000. There is no contention that these figures are inaccurate. Moreover we have held that the proper place for allowance of setoffs was in the liquidation suit. *Cohen v. North Avenue State Bank,*

291 Ill. App. 558; *Flanagan v. Madison Square State Bank,* 292 Ill. App. 448; *Heine v. Degen,* 362 Ill. 357.

A further complaint made by counsel for defendants (that the books of the receiver in the liquidation suit were not admissible because they were not compared and checked with the records of the bank) can avail defendants nothing because the only thing shown by these books was that defendants were given credit for dividends paid by the receiver so that they were benefited by the introduction of these books and not injured.

A further complaint is made that the accrual audit is inaccurate and inadmissible ''because it records the 'liability' upon checks drawn upon other banks and deposited in the Chicago Bank of Commerce as having accrued on the day when said checks were deposited in said bank—notwithstanding that by force of the agreement and custom applicable to such deposited items, said agreement suspended the relation of debtor and creditor pending the collection of the checks.''

Obviously the relation of debtor and creditor does not exist unless and until the check deposited is paid. But there is no suggestion that any checks deposited with the Bank of Commerce were not paid. And the argument of counsel that the method pursued by the certified public accountant in making the audit might show that the ''liabilities of the bank have been recorded as having accrued on the *wrong* days and, therefore, against the *wrong* stockholders'' we think, under the record in this case, is hypercritical.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

McSurely, J., concurs.

Mr. Presiding Justice Matchett specially concurring: I concur in these several judgments of this court with hestitation. I agree that Noyes & Co. must be held liable on the authority of *Golden v. Cervenka,* 278

Ill. 409. I agree the evidence was sufficient to justify a decree against these stockholders on the authority of *Cohen v. North Avenue State Bank,* 291 Ill. App. 558. However, I think the rule applied in determining the amount of their respective liabilities is inconsistent with the interpretation which this court heretofore, in *Cohen v. North Avenue State Bank,* 291 Ill. App. 558; *Flanagan v. Madison Square State Bank,* 292 Ill. App. 448; *Burket v. Reliance Trust & Savings Bank,* 296 Ill. App. 406, has given to the *dictum* of the Supreme Court in *Burket v. Reliance Trust & Savings Bank,* 366 Ill. 98. However, I concurred in that interpretation with much doubt. *Burket v. Reliance Trust & Savings Bank,* 296 Ill. App. 406, was decided on rehearing granted by a majority of the court.