John Irwin, Successor Receiver et al., Appellants, v. Edward Schleichert and Hattie M. Schleichert, Appellees.

### Gen. No. 43,444.

Heard in the first division of this court for the first district at the June term, 1945. Opinion filed January 7, 1946. Released for publication January 21, 1946.

AARON SOBLE and MARTIN S. GERBER, both of Chicago, for appellants.

CLOYES & CAVENDER, of Chicago, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

May 12, 1944, John Irwin, as receiver, and David Sterling, as a creditor of the Marshall Square State Bank, and Aaron Soble, as administrator of the estate of Emilia Schleichert, deceased, filed a creditors' bill against Edward Schleichert and Hattie M. Schleichert, his wife, to set aside two conveyances to a two-apartment building in Chicago, on the ground that the conveyances were fraudulent. Defendants denied the charges, the cause was referred to a master in chancery to take the evidence and make up his report together with his recommendations, which the master did and, among other things, found there was no fraud and recommended that the complaint be dismissed for want of equity. Objections to his report were overruled, they were ordered to stand as exceptions, the chancellor overruled the exceptions, approved the report, entered a decree dismissing the complaint for want of equity and plaintiffs appeal.

The record discloses that Albert Schleichert and Emilia, his wife, owned the two-apartment building as joint tenants. Albert owned 40 shares of the capital

stock of the Marshall Square State Bank of the par value of $100, which was in no way involved here. His wife, Emilia, also owned 40 shares of the same stock and on April 1, 1931, they executed a warranty deed conveying the premises to their married daughter, Selma Kostulski, for and in consideration of $10 "and other good and valuable considerations and love and affection." The deed was recorded May 28, 1931, The Marshall Square State Bank was closed October 2, 1931, and never reopened. It was apparently liquidated in the usual way by the Auditor of Public Accounts. On the day the bank closed, viz., October 2, 1931, plaintiff, David Sterling, as a creditor of the bank, brought a representative suit against the stockholders to enforce the constitutional liability. Prior to the filing of this suit Albert Schleichert died June 3, 1932, and Emilia, his wife, died October 28, 1938. August 28, 1937, Selma Kostulski, the daughter of Albert and Emilia Schleichert, and her husband Casimir Kostulski, by quit claim deed conveyed the property to the defendants, Edward Schleichert and Hattie M. Schleichert, his wife, in consideration of $1 and other good and valuable considerations.

August 23, 1934, judgment was entered in the creditors' suit against Emilia Schleichert for $4,000 and some time afterwards an execution issued which was returned by the sheriff no part satisfied. Nothing further was done until May 4, 1942, when David Sterling as a creditor in the stockholders' suit and the then receiver of the bank appointed in that suit, filed their complaint in equity against defendants, Edward and Hattie Schleichert, to set aside as fraudulent the conveyance of the property and to subject it to the payment of the judgment of $4,000. (On the oral argument counsel for plaintiffs said that plaintiffs sought only to subject Emilia's interest to the payment of the judgment.) This suit was dismissed on motion of defendants September 24, 1942. And it appears nothing

further was done until the filing of the present suit, May 12, 1944. The present suit is based on a claim allowed by the Probate court against the estate of Emilia Schleichert, deceased, for $5,964.88, being the amount of the $4,000 judgment with interest thereon. All proceedings in the Probate court were brought May 4, 1944, by Aaron Soble, counsel for plaintiffs in the instant case, he was appointed administrator of Emilia's estate, and as administrator, is one of the plaintiffs here. All of the Probate proceedings were without notice or knowledge of defendants.

The evidence is further that defendant, Edward Schleichert, was born in 1890; he did not graduate from grammar school but, at an early age, started to work for his parents who conducted a small milk business on the West Side of Chicago, and he continued in this work until 1917 when he was 27 years of age, at which time he was drafted into the army in the first World War, went overseas and was gassed in France. During the time he worked for his parents he received no compensation other than a living. Upon his discharge from the army he again went to work for his parents but on account of the state of his health he was not able to do the hard work required in the milk business and he then sought other employment. About 1920 he was married to Hattie Schleichert, the other defendant. About 1920 his parents sold the milk business and purchased the two-apartment building in question and about 1925, moved into one of the apartments. There is further evidence to the effect (and it is found by the master and sustained by the chancellor) that the parents desired to compensate their son, Edward, who was not very strong physically, for the service he had rendered, and to do so they wanted him to eventually own the building. In addition to Edward, there was born to Albert and Emilia, two daughters, both of whom were married at the time in question, and apparently did not need any financial assistance from

their parents. But the parents wanted to reserve their right to live in the apartment and to collect rent from the other apartment in case they needed financial help and they felt they could then look to Edward, and with this in view, they executed the warranty deed April 1, 1931, conveying the property to their daughter, Selma, for the benefit of Edward. After the execution of this deed, Albert and Emilia, his wife, continued to live in the apartment until Albert died, June 3, 1932. Thereafter Emilia continued to occupy the apartment until the summer of 1937. From the time the deed was executed in 1931, Edward lived in one of the apartments and paid some rent to his father and mother until the father died and until the mother later vacated the premises.

There is further evidence that Edward made considerable repairs on the building and that the daughter, Selma, paid taxes levied on the property from 1931 until 1937. In 1937 the mother, Emilia, on account of her health, was about to go to a hospital and was in need of money and it was at that time that Selma and her husband conveyed the property by quit claim deed to the defendants, Edward and his wife, Hattie. After the mother vacated one of the apartments, Edward rented it, collected rent from the tenant and paid no further rent to his mother. At the time of the execution of the quit claim deed, Edward paid his mother $2,000 in cash and executed and delivered to her his note for $2,000 and trust deed conveying the property to the Chicago Title & Trust Co., to secure payment of the note. The evidence as to the payment of the $2,000 in cash is that he cashed his soldier's bonus check for $1,356.16, withdrew from his savings account two checks, one for $233 and one for $400 and delivered the checks to Selma's husband who cashed the checks and paid the proceeds to Selma's mother, Emilia, for the purpose of paying the hospital, doctor bills and other expenses of the mother who died October 28, 1938, and

the balance of the $2,000 was expended for her funeral expenses.

The mortgage given to secure the other $2,000 was to be used in the event the mother, during her lifetime, needed the money. If she did not require additional money, the mortgage was to be cancelled upon her death. She died shortly thereafter and the mortgage was then cancelled.

The evidence further shows that Edward paid taxes on the real estate from 1938 to and including 1942, and there is further evidence to the effect that neither Edward, his wife, nor his two sisters, Martha or Selma, knew that their mother owned stock in the State Bank or that judgment had been entered against her until the summons was served in the suit filed to set aside the deeds in May, 1942.

There is further evidence and the master found, that from January 28, 1930 to and including April 1, 1931, 12 banks in Chicago were closed and that from April 2, 1931, to and including October 2, 1931, approximately 41 other banks were closed in Cook county; and further that the two deeds and other papers were drawn by Martha's husband—son-in-law of Emilia Schleichert—Theodore Szmergalski, who was an attorney at law; that the fair, cash value of the property on August 28, 1937, was $7,000. That at the time of Emilia's death on October 28, 1938 she left no property to which she held title except the balance of the $2,000 in possession of her daughter, Selma, above referred to.

The master also found there was no evidence offered by either of the parties to the suit showing what property, if any, was owned by Albert Schleichert or his wife, Emilia, on April 1, 1931 or August 28, 1937 and that the payment of the $2,000 in cash and the execution of the trust deed securing the payment of the note for the other $2,000 were "proved beyond all doubt." And that the defendant, "Edward Schleichert and his brother-in-law, Theodore Szmergalski and the other

witnesses for the defendants told the truth concerning the transactions complained of by plaintiffs," and that the master was of opinion that plaintiffs were guilty of inexcusable laches.

As stated, the chancellor approved the master's report in all things and it was decreed that the suit be dismissed for want of equity.

Counsel for defendants contend that plaintiffs failed to sustain the burden of proof that the transfers were fraudulent; that all the evidence, except some suspicions interposed by plaintiffs, showed the transfers were not fraudulent but were made in good faith. And furthermore, the rule of law announced by the Supreme court in this state is that where the master saw the witnesses and heard them testify, while his conclusion will not be given the weight of the verdict of the jury, his finding, when approved by the chancellor, will not be disturbed unless manifestly against the weight of the evidence, citing *McKey v. McKean*, 384 Ill. 112; while on the other side, counsel for plaintiffs say that this is not a correct statement of the law, citing *Jones v. Koepke*, 387 Ill. 97, where it was said that: "It is only where the court has heard the evidence that we have refused to disturb the finding unless it was clearly and manifestly against the weight of the evidence," and then analyzes the evidence, or lack of it, and says the evidence did not sustain the master. The court there, in speaking of the duty of a court of review when considering the finding of the master, said: "His finding, however, on such questions, and the weight to be given to such finding, depends upon the record in each particular case."

In *Stasch v. Romza*, 387 Ill. 67, the rule is announced to be that contended for by defendants, and in *Phillips v. W. G. N., Inc.*, 307 Ill. App. 1, we considered this question and cited authorities and said that whichever rule was followed in that case the result would be the same. So, too, in the case at bar we are of opinion that

upon a consideration of all the evidence in the record the finding of the master and the chancellor ought not to be disturbed.

In support of plaintiffs' contention that there was fraud in the execution of the two deeds, they discuss the evidence and say that it shows that the conveyance of the property on April 1, 1931, by Albert and Emilia was wholly without consideration and was done merely to avoid Emilia's liability as a stockholder of the bank, and in support of this cite *Kennard v. Curran*, 239 Ill. 122, and from that case quote the following: "Appellant contends that the decree cannot be sustained because there is no proof that Curran was insolvent at the time of the conveyances to his wife. *Actual insolvency is not necessary in order to render a voluntary conveyance void. If a person largely indebted makes a voluntary conveyance and shortly after becomes insolvent such conveyance will be held fraudulent.*" Counsel say the italics are theirs. We think the quotation from the *Kennard* case is not applicable to the facts in the case before us. Here Emilia, on April 1, 1931, when she and her husband made the conveyance, was not indebted, so far as the record shows, to anyone. She was not indebted on account of her ownership of the bank stock to anyone and could not be indebted or liable for such stock ownership unless and until a demand was made on the bank and payment refused. *Sanders v. Merchants State Bank*, 349 Ill. 547–564; *Burnett v. West Madison State Bank*, 375 Ill. 402 and *Cohen v. North Ave. State Bank*, 291 Ill. App. 558.

In the *Sanders* case the court said: "Until demand the depositor can maintain no action against the bank and therefore has no cause of action. The stockholder is liable to the same extent as the bank—that is, to pay upon demand made of the bank in such sums, at such times and to such persons as the depositor may direct. He can be held on no other terms and no action

can be maintained against him until demand made on the bank.''

We have considered the other contentions made by counsel for plaintiffs and also the point made by defendants that this court has no jurisdiction and that the appeal should be dismissed but find nothing that would warrant us in not considering the appeal on its merits and in affirming the decree.

The decree of the Superior court of Cook county is affirmed.

*Decree affirmed.*

MATCHETT, P. J., and NIEMEYER, J., concur.